IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 17, 2001 Session

# LANE-DETMAN, L.L.C., ET AL. v. MILLER & MARTIN, ET AL.

**Appeal from the Circuit Court for Hamilton County**
**No. 99C1483      Buddy Perry, Judge by Interchange**

**FILED JANUARY 9, 2002**

**No. E2001-00444-COA-R3-CV**

In 1995, Lane-Detman, LLC, Clara Lane, and Darlene Lane-Detman ("Plaintiffs"), invested $600,000 in two businesses in which Samuel Cooper ("Cooper") had an ownership interest. This investment soured, and in December 1997, Plaintiffs obtained a default judgment against Cooper. Before Plaintiffs invested with Cooper, Plaintiffs' attorney, defendant W. Scott McGinness, Jr. ("Defendant McGinness"), performed a background search on Cooper at the request of Plaintiff Darlene Lane-Detman ("Plaintiff Lane-Detman"). In addition to other investigative efforts, Defendant McGinness had the co-defendant, Equifax Services, Inc. ("Defendant Equifax"), perform a background search on Cooper. Defendant Equifax's report revealed no questionable or negative history on Cooper. After Plaintiffs obtained their default judgment against Cooper, Plaintiffs hired other counsel to assist with collection of the judgment. In 1998, Plaintiffs' new counsel uncovered an abundance of questionable and negative history on Cooper. Thereafter, in 1999, Plaintiffs sued Defendant McGinness and his law firm, Miller & Martin ("Defendant Miller & Martin"), and Defendant Equifax. The Trial Court granted summary judgment to the defendants, finding that Plaintiffs' claim against Defendant Equifax was barred by an exculpatory clause in the contract between Defendant Equifax and Defendant Miller & Martin and that Plaintiffs' claim against Defendants Miller & Martin and McGinness was barred by the statute of limitations. Plaintiffs appeal. We affirm.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed;**
**Case Remanded.**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J. and WILLIAM H. INMAN, Sr. J., joined.

J. Harvey Cameron, Jasper, Tennessee, for the Appellants, Lane-Detman, LLC, Clara Lane and Darlene Lane-Detman.

Gary S. Napolitan and D. Scott Bennett, Chattanooga, Tennessee, for the Appellees, Miller & Martin, Miller & Martin, LLP, and W. Scott McGinness, Jr.

Samuel L. Felker and Anna M. Grizzle, Nashville, Tennessee, for the Appellee, Choicepoint Services, Inc., f/k/a Equifax Services, Inc.

## OPINION

### Background

In January 1995, Plaintiff Lane-Detman hired Defendant McGinness to represent her in connection with an investment with PCM Holdings, LLC, and to perform a background check on PCM Holdings, LLC, and its principal, Samuel Cooper. The record on appeal contains an engagement letter dated January 12, 1995, sent from Defendant McGinness and received by Plaintiff Lane-Detman. Debbie Souders, an employee of Defendant Miller & Martin, then contacted Defendant Equifax and requested that it perform a background check on Cooper. Souders provided Defendant Equifax with Cooper's name, personal address and position as president and director of PCM Holdings, LLC.

Thereafter, on February 2, 1995, Defendant McGinness sent correspondence to Plaintiff Lane-Detman regarding his investigative efforts which included interviewing Cooper, Cooper's personal attorney, and others who had been associated with Cooper in business transactions. This correspondence stated the following:

> We had a Dunn & Bradstreet report run on the Company, but since it is still in the start-up stage, the results of the check were not meaningful. *We have also ordered a background check on Mr. Cooper by EquiFax, which should be completed by the end of next week.*

(emphasis added). This correspondence ended with the following paragraph:

> In summary, none of the contacts I have made to date in the course of my investigations has revealed any adverse information concerning either the Company or Mr. Cooper. Please do not hesitate to contact me if you have any questions in this regard.

The Trial Court found that on February 13, 1995, Defendant Equifax reported the findings of its investigation to Debbie Souder over the telephone. Souder then requested Defendant Equifax to close its investigation of Cooper and stated that if she received additional leads on Cooper, she would order an additional report from Defendant Equifax so that a more thorough investigation could be performed. On that same date, Defendant Equifax sent a final, written report to Souder regarding its investigation. The Equifax report essentially reiterated the information

Souder received over the telephone which included its finding that Cooper owned no real property in Shelby County, had no UCC filings in Shelby County, and had not been involved in any lawsuit in Shelby County state or federal court. The report also contained qualifying language that since the investigator did not have Cooper's date of birth and social security number, the results could not be verified.

The record on appeal shows it is undisputed that Plaintiffs never received the Equifax report. It is disputed whether the results of the Equifax report were verbally reported to Plaintiffs by Defendant McGinness. The record contains an affidavit of Defendant McGinness in which he states that after receiving the Equifax report, he contacted Plaintiff Lane-Detman and requested Cooper's social security number so that Defendant Equifax could confirm its results. According to Defendant McGinness' affidavit, Plaintiff Lane-Detman thereafter advised him on several occasions that she had asked Cooper for his social security number but Cooper refused to provide it to her. While Plaintiff Lane-Detman disputes that Defendant McGinness requested Cooper's social security number or date of birth from her, the Trial Court found, in its Memorandum Opinion, that Plaintiff Lane-Detman admitted that she did not request Cooper's social security number.

On February 28, 1995, Plaintiffs transferred a total of $600,000 to two companies in which Cooper had an ownership interest, PCM Media Fund, LLC, and PCM Clinic of Cleveland, LLC. Plaintiffs later became concerned about how Cooper was handling their investment and on December 14, 1995, demanded a financial accounting. Around this time, Plaintiff Lane-Detman withdrew her authorization allowing Cooper's daughter, acting as Cooper's agent, to sign checks on behalf of Plaintiff Lane-Detman. In August 1997, Plaintiffs filed suit against Cooper, PCM Media Fund and PCM Clinic of Cleveland, alleging intentional misrepresentation and fraud. In preparation of filing this lawsuit, Plaintiff Lane-Detman learned from her new counsel that $500,000 of Plaintiffs' investment was not reflected in any bank records.

On December 23, 1997, Plaintiffs obtained a default judgment in excess of $2 million against Cooper.[1] Plaintiffs, thereafter, in an attempt to collect on their default judgment, retained the services of another attorney, Lori Keen, of Memphis, Tennessee. Memphis was the last known location of Cooper. Attorney Keen used a private investigation service, Investigations Unlimited, to perform an asset search. The record on appeal contains an affidavit of the investigator who conducted this asset search, Gene Milner. Milner's affidavit states that on July 20, 1998, he provided an attorney in Attorney Keen's law firm the results of his preliminary search and on August 17, 1998, a final report. The record on appeal shows that Attorney Keen sent correspondence to Plaintiff Lane-Detman dated August 19, 1998, in which Keen apparently enclosed Milner's findings and advised the following:

---

[1] Plaintiffs also obtained a default judgment against the other defendants: $500,000 default judgment against PCM Media Fund, LLC, and $100,000 default judgment against PCM Clinic of Cleveland, LLC, plus attorney's fees.

For simplicity's sake, we use round numbers in this opinion.

After an extensive review of these materials, it is obvious that Mr. Cooper is a professional con-artist scam extraordinaire [sic] from way back. He has had more corporations than you could imagine. He is not really showing any assets according to this report and please note that at one time, at least he did have a Swiss bank account.

The Trial Court, in its Memorandum Opinion, found that Attorney Keen's investigator reported that Cooper had been using a false social security number and had a federal tax lien filed against him in 1992 in the amount of approximately $31,700.

The record on appeal shows that Defendant Miller & Martin entered into a services contract with Defendant Equifax in September 1988. It is undisputed that this contract ("Contract") was in effect when Defendant McGinness hired Defendant Equifax to conduct a background check on Cooper in 1995. The Contract contains an exculpatory clause ("Exculpatory Clause") which states, in pertinent part, the following:

Recognizing that information is secured by and through fallible human sources and that for the fee charged you cannot be an insuror [sic] of the accuracy of the information, we understand and agree that the accuracy of any information furnished is not guaranteed by you, and *we release you and your affiliated companies and your and their offices, agents, employees, and independent contractors from liability for any negligence in connection with the preparation of such reports and from any loss or expense suffered by us resulting directly or indirectly from your reports or those of your affiliated companies.*

(emphasis added).

On August 12, 1999, Plaintiffs filed suit against Defendants Miller & Martin and McGinness for legal malpractice, negligence, and breach of contract, alleging that the attorneys failed to properly perform a background check on Cooper. Thereafter, in January 2000, Plaintiffs filed an Amended and Restated Complaint ("Amended Complaint") in which they named Equifax, Inc., as a defendant, and alleged that Defendant Equifax was liable for negligence, negligent misrepresentation, and breach of contract. Plaintiffs alleged in their Amended Complaint that because they were third party beneficiaries of the Contract, Defendant Equifax was liable to them under the theories of breach of contract and negligent misrepresentation[2]

Defendants Miller & Martin and McGinness filed a Motion to Dismiss or, in the Alternative, for Summary Judgment, in which they argued that Plaintiffs' claims against them were barred by the statute of limitations found at Tenn. Code Ann. § 28-3-104. Defendants Miller &

_____

[2] The technical record on appeal shows that an Agreed Order was entered in which Plaintiffs were allowed to substitute ChoicePoint Services, Inc., in place of Defendant Equifax. In this opinion, however, to avoid confusion, we refer to this defendant as Equifax.

-4-

Martin and McGinness argued Plaintiffs had actual and constructive notice of their injury by December 23, 1997, the date Plaintiffs obtained the default judgment against Cooper. They further contended Plaintiffs' new counsel knew, by July 20, 1998, of the negative information regarding Cooper that the 1995 investigation did not uncover. Defendants Miller & Martin and McGinness argued that, accordingly, Plaintiffs' lawsuit filed against them on August 12, 1999, was barred by the one-year statute of limitations.

In response, Plaintiff Lane-Detman, in her affidavit, stated that while she was aware that Cooper had fraudulently taken Plaintiffs' money, she was not aware that Cooper "had a history of such . . . dealings, nor did [she] know of the judgments against him . . ." until she received Attorney Keen's August 19, 1998, correspondence. Moreover, Plaintiff Lane-Detman stated in her affidavit that she had no reason to believe that Defendant McGinness failed to properly perform the background check of Cooper until she received Attorney Keen's letter.

Defendant Equifax also filed a motion for summary judgment in which it contended it was entitled to judgment as a matter of law because Plaintiffs' breach of contract claim is barred by the Exculpatory Clause and because the undisputed material facts show that Plaintiffs could not establish their breach of contract claim or an essential element of their negligent misrepresentation claim, reliance.

The Trial Court granted both motions for summary judgment filed by the defendants. The Trial Court entered two separate Memorandum Opinions and Orders and incorporated its Memorandum Opinions by reference thereto in each of its Orders. In granting Defendant Equifax's motion for summary judgment, the Trial Court held that the Exculpatory Clause barred Plaintiffs' claim against Equifax. In its Memorandum Opinion, the Trial Court held the following:

> The language of the contract between Equifax and Miller & Martin is routine for such business transactions. Without the agreement, Miller & Martin could not get information from Equifax. A principal expects its agent to do what is necessary in the ordinary course of business to obtain necessary information. For the Court to find that third party beneficiaries can assert legal rights denied to the contract's principal is neither fair nor reasonable. Third party beneficiaries cannot avoid defenses available to Miller & Martin
> . . . .

The Trial Court held that Defendants Miller & Martin and McGinness were entitled to judgment as a matter of law because the one-year statute of limitation, Tenn. Code Ann. §28-3-104(a)(2), barred Plaintiffs' claims. The Trial Court, in its Memorandum Opinion, found that the statute of limitations began running by December 23, 1997, the date that Plaintiffs obtained their default judgment against Cooper.

Plaintiffs appeal.

**Discussion**

On appeal and although not exactly stated as such, Plaintiffs raise the following issues on appeal: (1) did the Trial Court err in granting summary judgment to Defendant Equifax because the Exculpatory Clause is unenforceable as being against public policy and because there are genuine issues of material fact regarding Plaintiffs' claims of negligent misrepresentation and breach of contract which preclude a grant of summary judgment; and (2) did the Trial Court err in granting summary judgment to Defendants Miller & Martin and McGinness because Plaintiffs timely filed their Complaint since they had no reason to believe they had a claim against these defendants until they received Attorney Keen's August 19, 1998, correspondence.

Before we consider the issues on appeal, we first address a motion to consider post-judgment facts filed by Defendants Miller & Martin and McGinness. These defendants, in their motion, request this Court to consider Plaintiff Lane-Detman's entry of guilty pleas in 2001, to federal charges of bank fraud and perjury for conduct occurring between August 1995 and May 1998. In their motion, defendants contend these post-judgment facts are evidence that Plaintiff Lane-Detman had a high level of business acumen and that due to her level of sophistication, she should have known of Cooper's efforts to defraud her more than one year prior to her filing this suit in August 1999. Exercising our discretion, we hold this motion is not well-taken, and it is denied. Tenn. R. App. P. 14(a).

Plaintiffs' appeal was precipitated by the Trial Court's granting of Defendants' motions for summary judgment, and, therefore, we will use the standard of review applicable to summary judgment. Our Supreme Court, in *Staples v. CBL & Assoc.*, 15 S.W.3d 83 (Tenn. 2000), provided this standard of review as follows:

> The standards governing an appellate court's review of a motion for summary judgment are well settled. Since our inquiry involves purely a question of law, no presumption of correctness attaches to the lower court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tenn. R. Civ. P. 56 have been met. *See Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn.1997); *Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn.1991). Tennessee Rule of Civil Procedure 56.04 provides that summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, *see Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn.1993); and (2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. *See Anderson v. Standard Register Co.*, 857 S.W.2d 555, 559 (Tenn.1993). The moving party has the burden of proving that its motion satisfies these requirements. *See Downen v. Allstate Ins. Co.*, 811 S.W.2d 523, 524 (Tenn.1991). When the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of disputed, material facts

which must be resolved by the trier of fact. *See Byrd v. Hall*, 847 S.W.2d at 215.

To properly support its motion, the moving party must either affirmatively negate an essential element of the non-moving party's claim or conclusively establish an affirmative defense. *See McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn.1998); *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn.1997). If the moving party fails to negate a claimed basis for the suit, the non-moving party's burden to produce evidence establishing the existence of a genuine issue for trial is not triggered and the motion for summary judgment must fail. *See McCarley v. West Quality Food Serv.*, 960 S.W.2d at 588; *Robinson v. Omer*, 952 S.W.2d at 426. If the moving party successfully negates a claimed basis for the action, the non-moving party may not simply rest upon the pleadings, but must offer proof to establish the existence of the essential elements of the claim.

The standards governing the assessment of evidence in the summary judgment context are also well established. Courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. *See Robinson v. Omer*, 952 S.W.2d at 426; *Byrd v. Hall*, 847 S.W.2d at 210-11. Courts should grant a summary judgment only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. *See McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn.1995); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn.1995).

*Staples*, 15 S.W.3d at 88-89; *see also Madison v. Love*, No. E2000-01692-COA-RM-CV, 2000 WL 1036362, at * 2 (Tenn. Ct. App. July 28, 2000), *no appl. perm. app. filed*, (holding that "[m]aterial supporting a motion for summary judgment must do more than 'nip at the heels' of an essential element of a cause of action; it must negate that element").

We now address Plaintiffs' arguments on appeal regarding Defendant Equifax. Plaintiffs contend on appeal that the Trial Court erred in granting summary judgment to Defendant Equifax based upon the Exculpatory Clause. Plaintiffs contend the Exculpatory Clause is not enforceable because it is counter to public policy. Plaintiffs further contend that Defendant McGinness, as Plaintiffs' counsel, could not ethically bind Plaintiffs to such a provision.

In Tennessee, parties are free to contract that one party's negligence will not subject him to liability. *Crawford v. Buckner*, 839 S.W.2d 754, 756 (Tenn. 1992). There are, however, exceptions to this rule, including that one cannot avoid liability for gross negligence. *Id.; Adams v. Roark*, 686 S.W.2d 73, 75-76 (Tenn. 1985). In addition, an exculpatory clause is not enforceable where the provision affects the public interest. *Crawford v. Buckner*, 839 S.W.2d. at 757 (quoting *Olson v. Molzen*, 558 S.W.2d 429, 431 (Tenn. 1977)). To determine whether an exculpatory

provision affects the public interest, courts are to use six factors which have been outlined by our Supreme Court as follows:

>(a) It concerns a business of a type generally thought suitable for public regulation.

>(b) The party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public.

>(c) The party holds himself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards.

>(d) As a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services.

>(e) In exercising a superior bargaining power the party confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence.

>(f) Finally, as a result of the transaction, the person or property of the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller or his agents.

*Id.*

For a court to find that a particular exculpatory provision affects the public interest, it is not necessary for all six of these factors be present. *Id.* Using these factors, Tennessee courts have found that contracting parties may not agree to release one party from liability for professional medical negligence through an exculpatory clause and have determined that exculpatory clauses in residential leases and residential construction loan contracts are void. *Olson v. Molzen*, 558 S.W.2d 429, 431 (Tenn. Ct. App. 1977); *Crawford v. Buckner*, 839 S.W.2d. at 757, 759; *Lomax v. Headley Homes*, No. 02A01-9607-CH-00163, 1997 WL 269432, at * 7 (Tenn. Ct. App. May 22, 1997) *no appl. perm. app. filed*. Courts have also used these factors to render void exculpatory clauses affecting safety deposit boxes; a patron's use of a health spa; and a cosmetology school's customer's receipt of hair straightening treatment. *Smith v. The Peoples Bank of Elk Valley*, No. 01A01-9111-CV-00421, 1992 WL 117061, at * 4 (Tenn. Ct. App. June 3, 1992) *no appl. perm.app. filed*; *Olson v. Molzen*, 558 S.W.2d at 430 (citations omitted). Our Supreme Court, however, has declined to render void an exculpatory clause in a contract between a provider of a telephone directory and a

business who contracted for a listing in the yellow pages. *Affiliated Prof'l Serv., Inc. v. South Central Bell Tel. Co.*, 606 S.W.2d 671, 672 (Tenn. 1980).

In support of their argument that Defendant Equifax's business is of a "type generally thought suitable for public regulation[,]" Plaintiffs cite to the federal Fair Credit Reporting Act, arguing that Defendant Equifax, in the preparation of background investigative reports, must comply with the Act's requirements that consumer reports be accurate. *Crawford v. Buckner*, 839 S.W.2d at 757; 15 U.S.C. §1681e(b). We find, however, the definition of "consumer report" provided by the Act does not include the type of report that Defendant Equifax prepared in this matter. 15 U.S.C. § 1681a(d). Moreover, Plaintiffs cite no case law, nor have we located any, which has interpreted this definition to include a background investigative report like the one provided by Defendant Equifax.

With respect to the second factor, we find that Defendant Equifax provides a "service of great importance to the public . . ." and that this service is "of practical necessity for some members of the public." *Crawford v. Buckner*, 839 S.W.2d at 757. We find that the third factor is also met since it appears from the record that Defendant Equifax performs "this service for any member of the public who seeks it, or at least for any member coming within certain established standards." *See id.*

The fourth and fifth factors, however, are not established by the proof contained in the record on appeal. The proof does not support a finding that Defendant Equifax "possesse[d] a decisive advantage of bargaining strength . . ." against Defendant Miller & Martin, a law firm. *Id.* Moreover, the record contains no proof applicable to the fifth factor since the record is silent as to whether Defendant Miller & Martin could have avoided the exculpatory provision by paying additional reasonable fees. *See id.*

With respect to the sixth factor, and while the evidence in the record is unclear, after drawing all reasonable inferences in Plaintiff's favor, we find that the facts and circumstances presented by the record on appeal at least arguably establish the sixth factor. *See id.*

Accordingly, at most, three out of six factors are present in this matter. While no one factor necessarily is given more weight than any other, of particular significance here are the facts that both parties involved in the Contract are sophisticated, commercial entities and that the service that Defendant Equifax provides has not yet been regulated by legislation. *See Parton v. Mark Pirtle Oldsmobile-Cadillac-Isuzu*, 730 S.W.2d 634, 636 (Tenn. Ct. App. 1987) (holding that the rule in *Olson v. Molzen* should not be extended to apply to transactions between "'tradesmen in the market place'"); *compare Olson v. Molzen*, 558 S.W.2d at 431 (voiding exculpatory provision in contract provided by physician to patient for abortion); *Crawford v. Buckner*, 839 S.W.2d. at 757, 759 (holding exculpatory clause was against public interest in residential property lease); *Lomax v. Headley Homes*, 1997 WL 269432, at * 7 (holding that exculpatory provision in residential construction loan agreement was void). Although all factors need not be present to render an exculpatory clause void, we hold that the proof contained in the record on appeal does not support a finding that the Exculpatory Clause in this commercial contract between Defendant Equifax and

Defendant Miller & Martin, a law firm, is against public policy. *See Crawford v. Buckner*, 839 S.W.2d at 757.

Plaintiffs also contend on appeal that their attorney, Defendant McGinness, for ethical reasons, was barred from binding them to the Exculpatory Clause. Plaintiffs contend that Defendant McGinness was ethically prohibited from binding Plaintiffs to the Exculpatory Clause without their express permission, citing Tenn. R. S. Ct. 7 EC 7-7 and DR 7-101(A)(4), because the clause substantially prejudices their rights as clients. The Trial Court, citing *Garrett v. Corry Foam Prod., Inc.*, 596 S.W.2d 808, 810-11 (Tenn. 1980), held that while Plaintiffs correctly contend that an attorney is prohibited from "substantially reducing a client's interests without the client's express permission[,]" this prohibition does not "address the issue of an attorney's authority in a contractual relationship where the client is a third-party beneficiary of the contract." We agree. *See id.* Plaintiffs, as third party beneficiaries to the Contract, are subject to the Exculpatory Clause since their rights "depend upon 'and are measured by', the terms of the contract." *Petty v. Sloan*, 277 S.W.2d 355, 358 (Tenn. 1955) (quoting 12 Am.Jur. *Contracts* § 289); *see also Rentenbach Constructors, Inc. v. Bowen*, No. E2000-1213-COA-R3-CV, 2000 WL 1690286, at * 3 (Tenn. Ct. App. Nov. 13, 2000), *appl. perm. app. denied May 21, 2001.*

The evidence contained in the record on appeal shows that the undisputed material facts support the Trial Court's grant of Defendant Equifax's motion for summary judgment. In light of our finding that the Exculpatory Clause is not against public policy and our finding that Plaintiffs, as third party beneficiaries, are subject to the Exculpatory Clause, we affirm the Trial Court's holding that Defendant Equifax is entitled to judgment as a matter of law.

We next consider Plaintiffs' argument on appeal that the Trial Court erred in granting summary judgment to Defendants Miller & Martin and McGinness based upon their statute of limitations defense. As discussed, the Trial Court held that the statute of limitations was triggered on December 23, 1997, the date Plaintiffs obtained their default judgment against Cooper. Plaintiffs, however, argue that the first time they were aware they had a claim against their former attorney and his law firm was when they received Attorney Keen's letter dated August 19, 1998. Plaintiffs contend they timely filed this action on August 12, 1999, which was within one year of discovery of their claim.

The statute of limitations applicable to Plaintiffs' legal malpractice claim is found at Tenn. Code Ann. § 28-3-104(a)(2), which provides for a one-year limitations period after the cause of action accrues. When a cause of action for legal malpractice accrues is determined by the "discovery rule." *John Kohl & Co. P.C. v. Dearborn & Ewing*, 977 S.W.2d 528, 532 (Tenn. 1998). Our Supreme Court held that the discovery rule has two elements, stating as follows:

> (1)     the plaintiff must suffer legally cognizable damage – an actual injury – as a result of the defendant's wrongful or negligent conduct, and

(2)    the plaintiff must have known or in the exercise of reasonable diligence should have known that this injury was caused by the defendant's wrongful or negligent conduct.

*Id.*

At issue in this appeal is when, under the appropriate summary judgment standards, Plaintiffs knew or should have known that their alleged injury was caused by the allegedly negligent background search performed by Defendants Miller & Martin and McGinness.[3] Under the discovery rule, a plaintiff's cause of action accrues when she had actual knowledge or constructive knowledge of her injury. *Id.* A plaintiff is deemed to have constructive knowledge "whenever the plaintiff becomes aware or reasonably should have become aware of facts sufficient to put a reasonable person on notice that an injury has been sustained as a result of the defendant's negligent or wrongful conduct." *Id.* This definition, however, is refined by our Supreme Court's determination that a plaintiff is not required to "actually know the specific type of legal claim he or she has, or that the injury constituted a breach of the appropriate legal standard." *Id.* at 533. "Whether the plaintiff exercised reasonable care and diligence in discovering the injury or wrong is usually a fact question for the jury to determine." *Wyatt v. A-Best Co., Inc.*, 910 S.W.2d 851, 854 (Tenn. 1995).

The Trial Court determined that the statute of limitations period was triggered when Plaintiffs obtained their default judgment against Cooper on December 23, 1997, and held, therefore, that Plaintiffs' lawsuit in this matter, filed on August 12, 1999, was time-barred. The record shows that in response to Defendants' Tenn. R. Civ. P. 56.03 statement of undisputed material facts, Plaintiffs contend they had actual and constructive knowledge of their injury only once they received Attorney Keen's August 19, 1998, correspondence.

We respectfully disagree with the Trial Court's determination that December 23, 1997, is the triggering date of the statute of limitations. After viewing the evidence in the record in the light most favorable to Plaintiffs, and drawing all reasonable inferences in Plaintiffs' favor, we do not believe that a reasonable person could reach only the one conclusion that Plaintiffs became aware or reasonably should have been aware as of that date of facts sufficient to put a reasonable person on notice that Plaintiffs' injury had been sustained as a result of these Defendants' alleged negligent or wrongful conduct. This, however, does not necessarily resolve this issue in Plaintiffs' favor.

The undisputed material facts contained in the record on appeal show that Plaintiffs hired Attorney Keen, who practices in Memphis, Tennessee, to assist with the collection of their default judgment against Cooper. Keen's office hired a private investigation firm, Investigations Unlimited, to conduct a search of Cooper's assets. The investigator who worked on this asset check was Gene Milner. The record on appeal contains Milner's affidavit which Defendants Miller &

---

[3] The Trial Court, in its Memorandum Opinion, did not address the date that Plaintiffs suffered their injury, and Plaintiffs, on appeal, do not raise this as an issue.

Martin and McGinness filed in support of their motion to dismiss and/or motion for summary judgment. The Tenn. R. Civ. P. 56.03 reply statement filed by Plaintiffs does not dispute Milner's affidavit.

Milner's affidavit and supporting exhibits establish that by July 20, 1998, Milner, using various internet search methods, found that a federal tax lien had been filed against Cooper in 1992 in Dallas, Texas; Cooper had been using a social security number issued to someone else who had died in 1985; and evidence existed of Cooper's ownership of a Swiss bank account. Moreover, Milner found that Cooper had operated several Tennessee-based corporations, five of which had been administratively dissolved. Likewise, Milner found that Cooper had been involved in several other non-Tennessee corporations, most of which had their charters suspended, revoked or canceled. Milner states in his affidavit that upon his discovering this information on July 20, 1998, he immediately took his printed search results to Attorney Cox, an attorney who practices in Attorney Keen's law firm.

Thereafter, on August 10, 1998, Milner received a complete report for an asset search from Advanced Research, Inc., another investigative service used by Milner, which showed the assets held by Cooper in Tennessee. In his affidavit, Milner states that he delivered this report to the attorneys' office on August 17, 1998. Thereafter, on August 19, 1998, Attorney Keen prepared correspondence to Plaintiffs regarding the results of Milner's investigation.

The undisputed material facts contained in the record on appeal establish that Plaintiffs' Memphis counsel, Attorneys Keen and Cox, received Milner's internet search results on July 20, 1998. The knowledge of Plaintiffs' counsel is imputed to Plaintiffs under basic agency theory. *Batchelor v. Heiskell, Donelson, Bearman, Adams, Williams & Kirch, P.C.*, 828 S.W.2d 388, 394 (Tenn. Ct. App. 1991). In holding that an attorney's knowledge is charged to his client, this Court held as follows:

> "[A] person generally is held to know what his attorney knows and should communicate to him, and the fact that the attorney has not actually communicated his knowledge to the client is immaterial. So, the facts constituting knowledge, or want of it, on the part of an attorney, are proper subjects of proof, and are to be ascertained by testimony as in other cases; *but when ascertained, the constructive notice thereof to the client is conclusive, and cannot be rebutted by showing that the attorney did not in fact impart the information so acquired.*"

*Smith v. Petkoff*, 919 S.W.2d 595, 597-98 (Tenn. Ct. App. 1995) (quoting 7A C.J.S. *Attorney and Client* § 182 (1980) (emphasis added).

We find that the undisputed material facts contained in the record on appeal show that by July 20, 1998, Plaintiffs' Memphis counsel acquired information from Milner which would have placed a reasonable person on notice that the 1995 background search performed by Defendants

Miller & Martin and McGinness was inaccurate. Since this information is imputed to Plaintiffs, we hold that the statute of limitations began running on July 20, 1998, and that Plaintiffs' Complaint filed against Defendants Miller & Martin and McGinness is time-barred. Tenn. Code Ann. § 28-3-104(a)(2). Accordingly, we hold the Trial Court did not err in granting summary judgment as a matter of law to Defendants Miller & Martin and McGinness.

### **Conclusion**

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for such further proceedings as may be required, if any, consistent with this Opinion and for collection of the costs below. The costs on appeal are assessed against the Appellants, Lane-Detman, LLC, Clara Lane, and Darlene Lane-Detman, and their surety.

_____
D. MICHAEL SWINEY, JUDGE