IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 10, 2003 Session

## RETA J. TOMPKINS, ET AL. v. KEVIN W. HELTON, ET AL.

Appeal from the Circuit Court for Putnam County
No. 00-N0374     John A. Turnbull, Circuit Judge

---

No. M2002-01244-COA-R3-CV - Filed June 12, 2003

---

The Plaintiffs, Reta J. Tompkins and her husband, Michael J. Tompkins, brought this negligence action against the Defendant, Kevin W. Helton, as the agent for the Defendant, B.K. Luna, individually and d/b/a Big Foot Speedway, Inc., a/k/a Tennessee Motor Speedway. The Defendants filed a motion for summary judgment with a copy of the Release and Waiver of Liability Agreement signed by the Plaintiffs. The trial court granted partial summary judgment, found that the release was valid as to the Defendants and released the Defendants as to all causes of action based on ordinary negligence. We affirm.

CAROL L. MCCOY, Sp. J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, and WILLIAM CAIN, JJ., joined.

W. Kennerly Burger, Murfreesboro, Tennessee, for the Appellant, Reta J. Tompkins and Michael J. Tompkins.

Clifford Wilson, Kerry Melissa Bradford, Nashville, Tennessee, for the Appellee Kevin W. Helton, B.K. Luna, individually and d/b/a Big Foot Speedway, Inc., a/k/a Tennessee Motor Speedway.

## OPINION

### I.
### BACKGROUND

On July 1, 2000, the Plaintiff, Reta Tompkins, was a guest at the Defendant's Tennessee Motor Speedway in Putnam County. Ms. Tompkins had to sign a release agreement before she was

allowed to enter the restricted loading area of the racetrack. The release contained bold type, with some portions all in capital letters, and read, in pertinent part:

**RELEASE AND WAIVER OF LIABILITY, ASSUMPTION OF RISK AND INDEMNITY AGREEMENT**
**IN CONSIDERATION** of being permitted to compete, officiate, observe, work for, or participate in any way in the EVENT(S) or being permitted to enter for any purpose any **RESTRICTED AREA** (Defined as any area requiring special authorization, credentials, or permission to enter or any area to which admission by the general public is restricted or prohibited), **EACH OF THE UNDERSIGNED**, for himself/herself, his/her personal representatives, heirs, and next of kin:

1.        . . .

2. **HEREBY RELEASES, WAIVES, DISCHARGES AND COVENANTS NOT TO SUE** NARI Agency, LLC, North American Racing Insurance, Inc., the promoters, participants, racing associations, sanctioning organizations or any subdivision thereof, track operators, track owners, officials, car owners, drivers, pit crews, rescue personnel, any persons in any RESTRICTED AREA, promoters, sponsors, advertisers, owners and lessees of premises used to conduct EVENT(S), premises and event inspectors, surveyors, underwriters, consultants and others, who give recommendations, directions, or instructions or engage in risk evaluation, loss control activities or sales regarding the premises or EVENT(S) and each of them, their directors, officers, agents and employees, all for the purposes herein referred to as "Releasees", FROM ALL LIABILITY TO THE UNDERSIGNED, his personal representatives, assigns, heirs, and next of kin FOR ANY AND ALL LOSS OR DAMAGE, AND ANY CLAIM OR DEMANDS THEREFOR ON ACCOUNT OF INJURY TO THE PERSON OR PROPERTY OR RESULTING IN DEATH OF THE UNDERSIGNED ARISING OUT OF OR RELATED TO THE EVENT(S), WHETHER CAUSED BY NEGLIGENCE OF THE RELEASEES OR OTHERWISE.

3. **HEREBY AGREES TO INDEMNIFY AND SAVE AND HOLD HARMLESS** the Releasees . . .

4. **HEREBY ASSUMES FULL RESPONSIBILITY FOR ANY RISK OF BODILY INJURY, DEATH OR PROPERTY DAMAGE** arising out of or  related to the EVENT(S) whether caused by NEGLIGENT RESCUE OPERATIONS OR PROCEDURES OF THE RELEASEES.

5.        . . .

6.        . . .

**I HAVE READ THIS RELEASE AND WAIVER OF LIABILITY, ASSUMPTION OF RISK AND INDEMNITY AGREEMENT, FULLY UNDERSTAND ITS TERMS, UNDERSTAND THAT I HAVE GIVEN UP SUBSTANTIAL RIGHTS BY SIGNING IT, AND HAVE SIGNED IT FREELY AND VOLUNTARILY WITHOUT ANY INDUCEMENT, ASSURANCE, OR GUARANTEE BEING MADE TO ME AND INTEND MY SIGNATURE TO BE A COMPLETE AND UNCONDITIONAL RELEASE OF ALL LIABILITY TO THE GREATEST EXTENT ALLOWED BY LAW.**

Below the last paragraph quoted above, the document provides a number of lines for each person's signature, the printing of his or her name, a job description, car number and pit pass number. Ms. Tompkins' husband, Michael Tompkins, held pit pass number 94.

Ms. Tompkins claimed that after she signed the release and entered the restricted area, Mr. Helton pulled a truck into the restricted loading area and left the vehicle in gear with the motor running. She asserted that, as a consequence, the truck continued to move and struck her with sufficient force to throw her about 10 feet, exacerbating a pre-existing back problem and injuring her further with cuts and bruises. These facts were not disputed. Ms. Tompkins claimed that Mr. Helton and Mr. B.K. Luna, individually and d/b/a Big Foot Speedway, a/k/a Tennessee Motor Speedway, were liable for the injuries that she sustained.

## II.
## APPELLANT'S CONTENTIONS

The trial court granted partial summary judgment to the Defendants on ordinary negligence only since the release did not discharge the Defendants from liability for acts of gross negligence. Thereafter, the case was tried before a jury on the issue of gross negligence. The jury ruled in favor of the Defendants on the issue of gross negligence. The Plaintiffs did not appeal the jury verdict. Instead, Ms. Tompkins appeals the decision of the trial court that granted summary judgment on all negligence claims based upon the release.

## III.
## DISCUSSION

When reviewing a grant of summary judgment, the Court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of the nonmoving party, and discard all countervailing evidence. *Byrd v. Hall,* 847 S.W.2d 208 (Tenn. 1993). Courts should grant a summary judgment only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn.1995); *see also Carvell v. Bottoms,* 900 S.W.2d 23, 26 (Tenn.1995). Summary judgment is only proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Shadrick v. Coker,* 963 S.W.2d 726, 731 (Tenn. 1998). Where a question of law is involved, no presumption of correctness attaches to the Trial Court's judgment. *Union Carbide v. Huddleston,* 854 S.W.2d 87, 91 (Tenn. 1993). Here, the parties do not dispute the facts; they dispute the effect and interpretation that should be given to the release.

Plaintiffs argue that the sign-in sheet is an adhesion contract and that the terms in the release agreement are so broad and vague as to be unenforceable as against public policy. According to Ms. Tompkins, the agreement purportedly releases any person for whatever might occur in the "restricted area," without defining the rights that a person may be relinquishing, without naming the precise parties to be released and without forming a contract between the plaintiff and the defendants. Thus, the Plaintiffs submit that the court erred in granting summary judgment.

Since the material facts are not disputed, we find that this case is controlled by the terms of the release agreement signed by Ms. Tompkins. The interpretation of a written agreement involves legal issues, and when the facts are not in dispute, the issues can be resolved by summary judgment. *Standard Fire Ins. Co. v. Chester O'Donley and Associates,* 972 S.W.2d 1, 5-6 (Tenn. Ct. App. 1998). The cardinal rule in the construction of contracts is to ascertain the intent of the parties. *Public Employees Benefit Services Corporation v. Parminter,* 60 S.W.3d 833, 836-7 (Tenn. 2001). If the contract is plain and unambiguous, the meaning thereof is a question of law, and it is the Court's function to interpret the contract as written according to its plain terms. *Id.* In such a case, the Court must interpret the contract as written rather than according to the unexpressed intention of one of the parties. *Id.* Courts cannot make contracts for parties but can only enforce the

contract which the parties themselves have made. *Id.* The primary objective in the construction of a contract is to discover the intention of the parties from a consideration of the whole contract. *Stones v. Regions Bank,* 2002 WL 126292 at *3 (Tenn. Ct. App. Feb. 1, 2002).

As a general rule, "Tennessee courts have long recognized that, subject to certain exceptions, parties may contract that one shall not be liable for his negligence to another." *Crawford v. Buckner,* 839 S.W.2d 754, 756 (Tenn.1992). In the absence of fraud or overreaching, such exculpatory provisions are generally held to be enforceable. Houghland v. Security Alarms and Services, 755 S.W.2d 769, 773 (Tenn.1988). In addition, exculpatory releases are governed by the same rules of construction as contracts. See Sherman v. American Water Heater Company, 50 S.W.3d 455 (Tenn. Ct. App. 2001)(upholding Olson v. Molzen, 558 S.W.2d 429 (Tenn.1977) (holding that an exculpatory clause in a contract for medical treatment is contrary to public policy)); see also, e.g., Empress Health & Beauty Spa, Inc. v. Turner, 503 S.W.2d 188 (Tenn. 1973) (upholding exculpatory clause in health club contract); Moss v. Fortune, 340 S.W.2d 902 (Tenn.1960)(upholding exculpatory clause used by riding horse establishment). There are, however, exceptions to this rule, including that an exculpatory clause is not enforceable where the provision affects the public interest. Lane-Detman, L.L.C. v. Miller Martin, et al, 82 S.W.3d 284, 292 (Tenn. Ct. App. 2002). In order for the trial court to determine whether an exculpatory provision affects the public interest, the Tennessee Supreme Court identified six characteristics commonly found in such a transaction:

(a) It concerns a business of a type generally thought suitable for public regulation.

(b) The party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public.

(c) The party holds himself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards.

(d) As a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services.

(e) In exercising a superior bargaining power the party confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence.

(f) Finally, as a result of the transaction, the person or property of the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller or his agents.

Olson, supra, 558 S.W.2d at 431. It is not necessary for all six criteria to be present, but "generally a transaction that has some of these characteristics would be offensive." Id.

The Plaintiffs submit that the release they signed is contrary to public policy under the "public interests" exception because the document purports to prospectively release all persons in the so-called "restricted area" from every form of negligence that might occur, even as to individuals who have not

signed the agreement or who are not specifically identified in the agreement.  However, an analysis of the six elements demonstrates that the Plaintiffs cannot avail themselves of the "public interests" exception.

Although the record on appeal does not reflect any regulation of speedways, the facts and circumstances surrounding speedway racing may arguably establish that such a dangerous activity might generally be thought suitable for regulation.  Nevertheless, owners of speedways do not perform a service of great importance to the public, notwithstanding that they may generate local revenue and some entertainment for the public.  No showing can be found in the record that the speedway is a matter of basic or practical necessity for some members of the public, nor can the Court envision any such showing.   Speedway races are not an essential public service, as are medical services, housing, or construction loans. *See Olson, supra; see also, Crawford, supra; Lomax v. Headley Homes,* No. 02A01-9607-Ch-00163, 1997 WL 269432 at *7 (Tenn. Ct. App. May 22, 1997) *no appl. perm. app. filed.*  Nor does the proof support a finding that the speedway owner who holds such races possesses a decisive bargaining advantage against a patron who seeks to enjoy such races.  A patron can observe the races from areas other than the restricted areas and need not sign any release.   Furthermore, the voluntary nature of attendance and the atmosphere of a recreational event at a speedway race negate a finding that the patron is placed under the control of the owner, so as to be subject to the risk of carelessness by the owner or his agents.   At best, one out of the six factors is present in this dispute.  Although all factors do not have to be present to render an exculpatory clause void, the record does not support a finding that the release is against public policy.

Next, the Plaintiffs' argument that the document was an adhesion contract is not supported by the record.  An adhesion contract is defined as a "standardized contract form offered to consumers of goods and services on essentially a "take it or leave it" basis. *Buraczynski v. Eyring,* 919 S.W.2d 314, 320 (Tenn. 1996). Enforceability generally depends upon whether the terms of the contract are beyond the reasonable expectations of an ordinary person, or are oppressive or unconscionable. *Id.* A patron can attend the speedway racetrack without signing the release agreement; there is no showing that a patron is faced with a "take it or leave it" situation.

Examining the terms of the agreement, the Court finds that the document was clear on its face that in consideration for permission to enter a restricted area, a person released the track operators, the track owners and any person in any restricted area from all liability for any and all loss or damage.  The Plaintiff's argument that the failure of the document to specifically identify the releasees voids the release is contrary to the Tennessee Supreme Court's holding in *Empress Health and Beauty Spa, Inc. v. Turner, supra.*  In *Empress,* a health club patron sued the club for damages that she sustained when a vibrating machine broke.  In examining the release signed by the patron, the Supreme Court held that the trial court's sole duty was to "find out what was meant by the language of the instrument.  This language must be sufficient, when looked at in the light of such

facts as the court is entitled to consider, to sustain whatever effect is given to the instrument." *Empress,* 503 S.W.2d at 190.

The Court may consider the fact that Ms. Tompkins executed the release agreement before she was permitted into a restricted area at a speedway racetrack and that her subsequent injury was caused by an agent of the Defendant in the restricted area. The language of the release agreement is sufficient for the Court to conclude that a reasonable person would understand that Ms. Tompkins agreed to release any person from all liability for any damage that she might sustain in exchange for permission to be in a restricted area. As such, the Court should sustain whatever effect is expressed in the document. The *Empress* Court stated it well when it ruled that "[t]he court will not attempt to ascertain the actual mental processes of the parties in entering into the particular contract; rather the law presumes that the parties understood the import of their contract and that they had the intention which its terms manifest." *Id.* The language of the release agreement is plain, complete and unambiguous. A contract is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one. We find that the release agreement has a certainty of meaning that requires no construction or interpretation beyond the clear import of the words used. The exculpatory clauses of the release agreement are unambiguous, valid and a bar to the plaintiff's recovery on ordinary negligence, as a matter of law.

## IV.
## CONCLUSION

In conclusion, we find Ms. Tompkins' arguments to be without merit. The general wording of the release agreement is not so broad and all encompassing as to be vague and unenforceable. No showing can be made that the release as written violates public policy or falls within a "public interests" exception. The exculpatory clauses did not create an adhesion contract. The judgment of the trial court is affirmed. This case is remanded for any further proceedings that may be necessary and for collection of costs assessed below. Costs of this appeal are taxed to the Appellants, Reta J. Tompkins and her husband, Michael J. Tompkins.

_____
CAROL L. McCOY, SPECIAL JUDGE