IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 6, 2020 Session

## OUTPOST SOLAR, LLC ET AL. v. HENRY, HENRY & UNDERWOOD, P.C. ET AL.

### Appeal from the Circuit Court for Giles County
### No. CC-11515      James G. Martin III, Judge

---

### No. M2019-00416-COA-R3-CV

---

A limited liability company sued its former attorney and his law firm for legal malpractice. The defendants moved for summary judgment. The trial court found that the action was barred by the applicable statute of limitations. Because the LLC's cause of action accrued more than one year before suit was filed, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which ANDY D. BENNETT, J., joined. RICHARD H. DINKINS, J., not participating.

Jay S. Bowen and Will Parsons, Nashville, Tennessee, for the appellant, Outpost Solar, LLC.

Winston S. Evans, Nashville, Tennessee, for the appellees, Robert C. Henry and Henry, Henry & Underwood, P.C.

## OPINION

### I.

#### A.

BNL Technical Services, LLC ("BNL") and Richland, LLC formed a joint venture to design and manufacture solar energy systems; they named their joint venture Outpost Solar. Richland's attorney, Robert Henry, prepared the necessary legal documents to create Outpost Solar, LLC. Beginning in January 2009, Mr. Henry also served as Outpost Solar's

registered agent and counsel.[1]  In August 2011, BNL acquired full ownership of Outpost Solar.

Wilson Stevenson, sole owner of BNL, served as president of Outpost Solar.  He arranged to lease a 44,000-square-foot building in Pulaski, Tennessee, for Outpost Solar's operations.  He negotiated the lease terms with Dan Speer, executive secretary for the Industrial Development Board of the City of Pulaski and Giles County, Tennessee (the "IDB").  Mr. Henry, who was also the attorney for the IDB, drafted the lease based on the terms negotiated by the parties.  The lease had an initial five-year term, with the option to renew for three additional five-year periods.  Outpost Solar also had an option to lease adjacent property with the IDB's consent.

Mr. Henry terminated his attorney-client relationship with Outpost Solar at the end of January 2012.  Shortly thereafter, Dan Speer and the chairman of the IDB exchanged emails discussing the expansion plans of another industrial park tenant.  The tenant had expressed interest in using the property currently subject to Outpost Solar's lease option.  The IDB asked Outpost Solar to waive its option.  Discussions ensued, but the parties never reached an agreement on the terms of a waiver.

In addition to the option dispute, other issues arose between the IDB and Outpost Solar.  Of particular relevance here, on April 6, 2012, Mr. Henry wrote to Mr. Stevenson:

> Our firm represents the [IDB].  It is our understanding a lien has been filed of record against Outpost Solar, LLC by Comfort Supply, Inc.  This lien and any additional liens filed of record places you in direct violation of Section 5.02 of your lease agreement with IDB.  This violation requires your immediate attention for resolution.
>
> While this matter is in dispute, one option for you is to obtain and record a bond to indemnify you against the lien pursuant to T.C.A. § 66-11-142.
>
> At your earliest convenience, please advise how you plan to resolve this matter.

Mr. Stevenson referred the matter to Outpost Solar's attorney, who responded to Mr. Henry, in relevant part,

---

[1] The nature of the relationship between Outpost Solar and Mr. Henry during this time is disputed. But, for purposes of summary judgment, Mr. Henry does not dispute that he represented Outpost Solar between January 2009 and February 2012.

> Outpost Solar is currently engaged in settlement negotiations with . . . Comfort Supply, Inc. . . . in an effort to satisfy the debt and release the lien.
>
> Given the extended time frame of the settlement negotiations, Outpost Solar is in the process of obtaining a bond to indemnify against the lien . . . . I will provide you with a copy of the bond immediately upon receipt.

Outpost Solar's attorney later provided Mr. Henry with a copy of the full release of lien.

Throughout the spring and summer of 2012, attorneys for both sides discussed a variety of lease issues, both large and small, such as waiver of the lease option, the location of the property line, and responsibility for remedying some defective painting on the leased premises. These discussions culminated in another written notice of default in the fall.

On October 11, 2012, Mr. Henry notified Mr. Stevenson that Outpost Solar was again in direct violation of the lease. The IDB asserted several breaches and requested that Outpost Solar cure these deficiencies within the time frame provided in the lease. Mr. Henry warned Mr. Stevenson, that should Outpost Solar fail to resolve these issues during the cure period, the IDB could choose to terminate the lease. Mr. Henry also informed Mr. Stevenson that the IDB would not provide the necessary consent for Outpost Solar to exercise the option to lease adjacent land.

Even so, Outpost Solar notified the IDB that it was exercising the option. Mr. Henry responded that Outpost Solar had not resolved all the deficiencies outlined in his October letter and that the lease was terminated. Outpost Solar vacated the premises the following May.

## B.

Outpost Solar originally filed this legal malpractice action against Mr. Henry and his law firm, Henry, Henry & Underwood, P.C., on October 11, 2013. With the court's permission, Outpost Solar later filed an amended complaint adding BNL as a plaintiff. Because BNL is not a party to this appeal, we focus on Outpost Solar's claims.

Outpost Solar alleged that it had an attorney-client relationship with Mr. Henry when he drafted the lease. And the attorney had a continuing duty not to "act adversely to Outpost Solar" after the attorney-client relationship ended, especially in "matters substantially related to his representation of the company." As alleged in the amended complaint, Mr. Henry committed legal malpractice by "violat[ing] his duties to [a] former client, Outpost Solar, as set forth in Rule 1.9 of Tennessee's Rules of Professional Conduct, when he devised and implemented the scheme to constructively evict Outpost Solar and to

3

deprive Outpost Solar of the right contained in the very Lease he had drafted on Outpost Solar's behalf."[2]

The amended complaint also alleged that Mr. Henry's October 11, 2012 letter was the "opening salvo in [Mr.] Henry's and the IDB's campaign to constructively evict Outpost Solar from the Leased Property." Outpost Solar was ultimately forced to vacate the premises. As a result, the company's "business was destroyed and it lost the tremendous investments made in improving the Building[,]" a loss of over two million dollars.

Mr. Henry moved for summary judgment on the ground that Outpost Solar's claims were barred by the one-year statute of limitations for legal malpractice. *See* Tenn. Code Ann. § 28-3-104(c)(1) (2017). In support of his motion, Mr. Henry submitted a statement of undisputed facts, the deposition of Mr. Stevenson, and his own affidavit. Mr. Henry agreed—solely for purposes of summary judgment—that in representing the IDB against Outpost Solar in connection with the lease, he breached his duty to his former client. But he argued that the correspondence between the parties during the spring and summer of 2012 showed that, Outpost Solar was aware of Mr. Henry's adverse representation more than one year before suit was filed.

Outpost Solar contended that there was no evidence that it had suffered any harm from these earlier interactions. And it denied that the previous exchanges were adversarial. At the very least, Outpost Solar maintained that a factual dispute existed as to when Mr. Henry began acting adversely.

The trial court agreed with Mr. Henry. The court ruled that Outpost Solar knew or should have known that it had been injured by Mr. Henry's alleged wrongful conduct before October 11, 2012. So it granted summary judgment in favor of the defendants and dismissed Outpost Solar's claims.

---

[2] Rule 1.9 of our Rules of Professional Conduct provides, in relevant part,

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

TENN. SUP. CT. R. 8, Rule 1.9(a).

## II.

### A.

Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." TENN. R. CIV. P. 56.04. Summary judgment motions are particularly well-suited for defenses based on statutes of limitations because the facts material to the defense are often undisputed. *Cherry v. Williams*, 36 S.W.3d 78, 83 (Tenn. Ct. App. 2000). A grant of summary judgment is appropriate "when the facts and the reasonable inferences from those facts would permit a reasonable person to reach only one conclusion." *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009).

The statute of limitations is an affirmative defense. TENN. R. CIV. P. 8.03. As such, a party moving for summary judgment on the ground that a claim is barred by the statute of limitations has the burden of establishing all of its elements. *Carr v. Borchers*, 815 S.W.2d 528, 532 (Tenn. Ct. App. 1991). Satisfying this burden requires more than a "conclusory assertion that summary judgment is appropriate"; rather, the movant must set forth specific material facts as to which the movant contends there is no dispute. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015).

If a motion for summary judgment is properly supported, the nonmoving party must then come forward with something more than the allegations or denials of its pleadings. *Id.* at 265. The nonmoving party must, "by affidavits or one of the other means provided in Tennessee Rule 56, 'set forth specific facts' *at the summary judgment stage* 'showing that there is a genuine issue for trial.'" *Id.* (quoting TENN. R. CIV. P. 56.06).

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Blair v. W. Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). We review the summary judgment decision as a question of law. *Martin*, 271 S.W.3d at 84; *Blair*, 130 S.W.3d at 763. Thus, we review the record de novo and make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been met. *Eadie v. Complete Co.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair* 130 S.W.3d at 763.

### B.

In considering a statute of limitations defense, we typically examine three interrelated elements: "the length of the limitations period, the accrual of the cause of action, and the applicability of any relevant tolling doctrines." *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 456 (Tenn. 2012). But here, the only element in dispute is when the cause of action accrued. The parties agree that the one-year statute

5

of limitations for legal malpractice actions applies to Outpost Solar's claims. *See* Tenn. Code Ann. § 28-3-104(c)(1). And Outpost Solar has not raised any relevant tolling doctrines.

To determine when the cause of action accrued, we apply the discovery rule. *Story v. Bunstine*, 538 S.W.3d 455, 463 (Tenn. 2017). Under this rule, two distinct elements must be present before a legal malpractice cause of action accrues: injury and knowledge. *John Kohl & Co. v. Dearborn & Ewing*, 977 S.W.2d 528, 532 (Tenn. 1998). "[T]he plaintiff must suffer legally cognizable damage—an actual injury—as a result of the defendant's wrongful . . . conduct." *Id.* And, "the plaintiff must have known or in the exercise of reasonable diligence should have known that this injury was caused by the defendant's wrongful . . . conduct." *Id.*

Tennessee's accrual standard recognizes that "not every misstep leads to a fall." *Cherry*, 36 S.W.3d at 84. "[N]egligence without injury is not actionable." *Id.* So evidence of an actual injury is critical. *See id.* The clearest example of an actual injury is when a plaintiff has lost "a legal right, remedy[,] or interest" or incurred a new liability as a result of the wrongful conduct. *John Kohl & Co.*, 977 S.W.2d at 532. But actual injury can occur under less obvious circumstances as well. A plaintiff has also suffered actual injury when "forced to take some action or otherwise suffer 'some actual inconvenience.'" *Id.* (quoting *State v. McClellan*, 85 S.W. 267, 270 (Tenn. 1905)). Incurring an expense, such as attorney's fees or court costs, as a result of the defendant's conduct qualifies as actual injury. *See Cardiac Anesthesia Servs., PLLC v. Jones*, 385 S.W.3d 530, 543-44 (Tenn. Ct. App. 2012). But our supreme court has cautioned that "the injury element is not met if it is contingent upon a third party's actions or amounts to a mere possibility." *John Kohl & Co.*, 977 S.W.2d at 532.

Outpost Solar argues that the company suffered no legally cognizable damage until May 2013, when it was forced to vacate the leased premises. Conversely, Mr. Henry takes the position that Outpost Solar suffered legally cognizable damage in the spring of 2012 when it was forced to respond to his demand to cure a previous breach. We agree with Mr. Henry.

It is undisputed that on April 6, 2012, Mr. Henry sent a letter to Wilson Stevenson notifying him that the Comfort Supply lien put Outpost Solar "in direct violation of [the lease]." On behalf of the IDB, Mr. Henry demanded an immediate resolution. And on May 3, Outpost Solar, through its attorney, responded that it was attempting to negotiate a release of lien and, in the meantime, was "in the process of obtaining a bond to indemnify against the lien." A month later, Outpost Solar's attorney provided Mr. Henry with a full release of the lien and explained that the release was "en route to be recorded." Outpost Solar's actions—engaging an attorney, obtaining a bond, and recording a release—qualify as legally cognizable damage. *See id.* at 533 (finding plaintiffs suffered an actual injury when "they began to incur expenses, or at least had to take some action"); *Spar Gas, Inc.*

6

*v. McCune*, 908 S.W.2d 400, 403 (Tenn. Ct. App. 1995) (acknowledging that cost of hiring an attorney constituted actual injury); *Denley v. Smith*, No. 48, 1989 WL 738, at *3-4 (Tenn. Ct. App. Jan. 9, 1989) (holding that cost of filing a reparation claim qualified as an actual injury).

Outpost Solar complains that the letters do not constitute proof of actual injury. We disagree. Without dispute, Outpost Solar received Mr. Henry's letters. And the company's attorney responded with an explanation of Outpost Solar's ongoing efforts to resolve the issue. That is enough to satisfy the actual injury requirement. *See John Kohl & Co.*, 977 S.W.2d at 533 (ruling that the plaintiffs suffered an actual injury when their accountant was forced to respond to an IRS inquiry). The amount of damage is irrelevant. *Denley*, 1989 WL 738, at *3. "When any damages are known, the statute begins to run." *Id.* at *4.

Outpost Solar also contends that these earlier interactions with Mr. Henry were completely unrelated to the wrongful conduct at issue. But the heart of the company's legal malpractice claim is that Mr. Henry acted adversely to his former client in connection with the lease.[3] Mr. Stevenson's belief that the previous exchanges were simply "communications resolving outstanding items" is just that—his belief. Subjective beliefs cannot create a genuine issue of material fact. *Fowler v. Happy Goodman Family*, 575 S.W.2d 496, 499 (Tenn. 1978).

We find Outpost Solar's attempts to focus solely on the events in October unavailing. In addition to the Comfort Supply lien dispute, Outpost Solar and the IDB were clearly at odds over the option to lease the adjacent property and responsibility for remedying some defective painting on the leased premises. Attorneys were involved on both sides. The only difference between the disputes in October and the previous ones is the amount of alleged harm that resulted. A plaintiff may not "delay filing [suit] until all injurious effects or consequences of the actionable wrong are actually known." *Wyatt v. A-Best, Co.*, 910 S.W.2d 851, 855 (Tenn. 1995).

Even with actual injury, the knowledge component of the discovery rule must also be satisfied. *See John Kohl & Co.*, 977 S.W.2d at 532; *Cherry*, 36 S.W.3d at 83. It is not necessary for the plaintiff to know "the specific type of legal claim" or "that the injury constituted a breach of the appropriate standard." *John Kohl & Co.*, 977 S.W.2d at 533. The key inquiry is whether the plaintiff had knowledge of sufficient facts to put a reasonable person on notice of the injury. *Id.*

---

[3] At oral argument, Outpost Solar's counsel confirmed that the legal malpractice claim was that Mr. Henry breached his duty not to be adverse to a former client. We note that conduct violating the Rules of Professional Conduct does not necessarily "constitute actionable malpractice." *See Lazy Seven Coal Sales, Inc. v. Stone & Hinds, P.C.*, 813 S.W.2d 400, 404 (Tenn. 1991) (referring to Tennessee's Code of Professional Responsibility). Although the standard in the Rules has some relevance, "the standard of care is the particular duty owed the client under the circumstances of the representation," which is not always the standard specified in the Rules. *See id.* at 405.

Outpost Solar should have been aware that Mr. Henry was acting adversely to its interests as a tenant as early as April 2012. Mr. Henry sent the initial notice of breach to Mr. Stevenson, president of Outpost Solar. The fact that later correspondence was directed to Outpost Solar's attorneys is immaterial. *See Lane-Detman, L.L.C. v. Miller & Martin*, 82 S.W.3d 284, 296 (Tenn. Ct. App. 2002) (reasoning that "[t]he knowledge of [a party's] counsel is imputed to [the party] under basic agency theory"). Mr. Stevenson's belief that all the harm started after the October letter does not change the outcome. Outpost Solar "is deemed to have discovered the right of action if [it was] aware of facts sufficient to put a reasonable person on notice that [it had] suffered an injury as a result of wrongful conduct." *John Kohl & Co.*, 977 S.W.2d at 533 (citation omitted). That standard was met before October 11, 2012.

## III.

Viewing the evidence in the light most favorable to Outpost Solar, the undisputed facts show that Outpost Solar suffered an actual injury as a result of Mr. Henry's alleged wrongful conduct and that it knew or should have known about that injury more than one year before suit was filed. Because Outpost Solar's cause of action accrued before October 11, 2012, this action was untimely. So we affirm the trial court's judgment.

_____
W. NEAL MCBRAYER, JUDGE

8