## IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE

|  |  |
|---|---|
| JOHN KOHL & COMPANY P.C., JOHN B. KOHL, III AND HELEN H. KOHL, INDIVIDUALLY, and JOHN B. KOHL, III, TRUSTEE, as Trustee of the John Kohl & Company, P.C. Profit Sharing Plan, <br><br> Plaintiffs-Appellants, <br><br> v. <br><br> DEARBORN & EWING, a Tennessee General Partnership, and DAN E. HUFFSTUTTER, <br><br> Defendants-Appellees, | **FOR PUBLICATION** <br><br> **Filed:** October 5, 1998 <br><br> Davidson Circuit <br><br> Hon. Thomas W. Brothers, Judge <br><br> Trial Court No. 90C-1962 <br><br> Supreme Court No. 01S01-9711-CV-00255 |

**FILED**

**October 5, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

For Plaintiffs-Appellants:

Steven C. Douse
King & Ballow
Nashville, Tennessee

For Defendants-Appellees:

John Branham
Kathryn Barnett
Branham & Day, P.C.
Nashville, Tennessee

## O P I N I O N

JUDGMENT OF COURT OF APPEALS                    DROWOTA, J.
AFFIRMED.

In this legal malpractice action, the plaintiffs, John Kohl & Company

P.C., John B. Kohl, III and Helen H. Kohl, Individually, and John B. Kohl, III, Trustee,

as Trustee of the John Kohl & Company, P.C. Profit Sharing Plan, (collectively referred to as the "plaintiffs"), appeal from the Court of Appeals' decision affirming the trial court's finding that the statute of limitations barred the plaintiffs' recovery for negligently provided legal advice pertaining to certain business matters.[1] The plaintiffs have also appealed from the denial of legal fees associated with prosecuting this action against the defendant, Dearborn and Ewing, and one of its associates, Dan Huffstutter. The issues before us are: (1) whether certain of the plaintiffs' claims are barred by the one-year statute of limitations applicable to legal malpractice actions, see Tenn. Code Ann. § 28-3-104,[2] and (2) whether the plaintiffs are entitled to recover legal fees associated with prosecuting this action. For the reasons explained hereafter, the decision of the Court of Appeals is affirmed.

## BACKGROUND

Plaintiffs John and Helen Kohl have been in the land surveying business since 1963. In 1983, they decided to incorporate their business and sought legal advice from the defendant law firm of Dearborn and Ewing. The defendant, Dan Huffstutter, an associate in the law firm, assisted the Kohls in incorporating their business. He also advised them from 1983 to 1988 on issues related to tax, business, and personal finance.

In 1984, Huffstutter advised the Kohls to adopt a profit sharing plan for the benefit of themselves and their employees, which they did. Huffstutter aided in the development of the plan and administered it until 1988. He also advised the

---

[1]The plaintiffs were awarded $33,091.05 for the legal malpractice of the defendants. However, the trial court found the plaintiffs' claims relating to the transfer of funds into a profit sharing plan and the contributions of individual retirement account funds to the plan were barred by the statute of limitations.

[2]Tenn. Code Ann. § 28-3-104(a) provides in pertinent part: "The following actions shall be commenced within one (1) year after the cause of action accrued: . . . (2) Actions and suits against attorneys . . . for malpractice, whether the actions are grounded or based in contract or tort. . . ."

Kohls in 1986 on how to finance the purchase of a building to accommodate their expanding business. Pursuant to Huffstutter's advice, the Kohls obtained a loan from a bank, a portion of which was guaranteed by the Small Business Administration. The proceeds of the loan were used to buy and renovate the needed building. Huffstutter further advised the Kohls that their profit sharing plan should acquire the portion of the loan guaranteed by the government. He explained that in order to do this, the Kohls needed to transfer funds from their individual retirement accounts into the plan. Huffstutter informed the Kohls that such a rollover would not be taxable. Finally, Huffstutter advised each of the Kohls to make a $2,000 contribution to the plan in 1986 instead of placing the money into their own retirement accounts, which they did.

In September 1988, the Kohls received a letter from the IRS informing them of the following:

> In our review of your tax return for 1986, it appears that the income, deductions and credits you reported do not agree with the amounts reported to us on information returns filed by the payers.
>
> Please explain in a signed statement where the amounts are reported on your tax return. If the income was not reported or if the deductions or credits were overstated, please explain why. Attach any supporting material you may want us to consider. . . .
>
> * * *
>
> An examiner will review your return and records or other substantiation and explanation. If we propose any changes to your tax, we will explain them. If you agree to the proposed changes, we will ask you to sign an agreement form. If we do not hear from you within 30 days from the date of this letter, we will prepare the adjustment based on the information we have available.

On October 19, 1988, the Kohls' accountant, David Hinton, wrote a response letter on behalf of the Kohls to the IRS which provided the explanations

sought.  A few days later on October 24, 1988, Robert Kolarich, another of the Kohls'

lawyers, wrote Dearborn & Ewing a letter which stated the following:

> In our last discussion of John Kohl's account with your firm, it was
> agreed that you would handle the application for an extension of his tax
> return, after which the file would be removed.  Mr. Kohl intends to hire
> a new firm to handle his tax work, however, I understand that a new
> question has arisen with regard to his pension and profit sharing plans.
> Evidently, Mr. Huffstutter had advised that the funds held in an IRA
> account could be transferred to the pension and profit sharing account
> and the IRS is reviewing the transaction.  Please advise as to when this
> issue may be resolved so that the files may be transferred.

On May 1, 1990, the plaintiffs filed a legal malpractice claim against

Dearborn & Ewing and Huffstutter.  The complaint alleged that the defendants

committed malpractice in negligently drafting and administering the profit sharing

plan, advising the plaintiffs that the plan should acquire the portion of the loan

guaranteed by the government, advising the plaintiffs that they should transfer funds

from their own retirement accounts into the plan and that such rollovers would not be

taxed, and in advising the plaintiffs to make contributions to the plan instead of to

their own retirement accounts. The plaintiffs sought to recover damages incurred as

a result of this advice, as well as for legal fees already paid to the defendants, the

legal fees spent on correcting the defendants' errors, and the legal fees associated

with prosecuting the malpractice action against the defendants.

The defendants did not contest liability.  Rather, they contended that

the statute of limitations had run on certain of the plaintiffs' claims, and that the

plaintiffs were not entitled to legal fees incurred in prosecuting the present action.

After a four-day bench trial, the trial court found the defendants liable

for failing to draft and administer the profit sharing plan correctly, and for erroneously

advising that the plan should purchase the government guaranteed portion of the loan obtained to buy the building housing the plaintiffs' business. The trial court awarded damages in the amount of $33,091.05, which included legal fees for correcting the defendants' errors. The court further found that the claims relating to the improper rollover and contribution of individual retirement account funds to the plan were barred by the one-year statute of limitations. The trial court noted that in the letter of October 24, 1988, Mr. Kolarich and Mr. Kohl had noticed and became aware of the problem "and it was so severe in his mind and Kohl's mind that they were going to change law firms and have someone else do their tax work." Finally, the court determined that attorney's fees paid to the defendants for work that had been negligently performed were not recoverable, and neither were the legal fees associated with prosecuting the malpractice action.

The Court of Appeals affirmed the trial court, except for that portion of the judgment denying the plaintiffs a recovery for attorney's fees paid for legal work negligently performed by the defendants. Accordingly, the Court of Appeals remanded the case to the trial court to determine the amount of initial fees payable to the plaintiffs as damages.

Thereafter, we granted review to determine (1) whether the lower courts erred in holding that the plaintiffs' claims arising from the rollover and contribution of funds to the profit sharing plan were barred by the one-year statute of limitations, and (2) whether the plaintiffs are entitled to recover attorney's fees incurred in pursuing the instant action. We find that the lower courts correctly resolved these two questions.

**ANALYSIS**

–5–

## I.

The statute of limitations for legal malpractice is one year from the time the cause of action accrues. Tenn. Code Ann. § 28-3-104(a)(2). When the cause of action accrues is determined by applying the discovery rule. Under this rule, a cause of action accrues when the plaintiff knows or in the exercise of reasonable care and diligence should know that an injury has been sustained as a result of wrongful or tortious conduct by the defendant. Shadrick v. Coker, 963 S.W.2d 726, 733 (Tenn. 1998); Stanbury v. Bacardi, 953 S.W.2d 671, 677 (Tenn. 1997).

In legal malpractice cases, the discovery rule is composed of two distinct elements: (1) the plaintiff must suffer legally cognizable damage - an actual injury - as a result of the defendant's wrongful or negligent conduct, and (2) the plaintiff must have known or in the exercise of reasonable diligence should have known that this injury was caused by the defendant's wrongful or negligent conduct. Carvell v. Bottoms, 900 S.W.2d 23, 28-30 (Tenn. 1995). An actual injury occurs when there is the loss of a legal right, remedy or interest, or the imposition of a liability. See LaMure v. Peters, 924 P.2d 1379, 1382 (N.M. App. 1996). An actual injury may also take the form of the plaintiff being forced to take some action or otherwise suffer "some actual inconvenience," such as incurring an expense, as a result of the defendant's negligent or wrongful act. See State v. McClellan, 85 S.W. 267, 270 (Tenn. 1905)("[A negligent act] may not inflict any immediate wrong on an individual, but . . . his right to a remedy . . . will [not] commence until he has suffered some actual inconvenience. . . . [I]t may be stated as an invariable rule that when the injury, however slight, is complete at the time of the act, the statutory period then commences, but, when the act is not legally injurious until certain consequences occur, the time commences to run from the consequential damage. . . ." ). However, the injury element is not met if it is contingent upon a third party's actions or amounts

to a mere posssibility. See Caledonia Leasing v. Armstrong, Allen, 865 S.W.2d 10, 17 (Tenn. App. 1992).

The knowledge component of the discovery rule may be established by evidence of actual or constructive knowledge of the injury. Carvell, 900 S.W.2d at 29. Accordingly, the statute of limitations begins to run when the plaintiff has actual knowledge of the injury as where, for example, the defendant admits to having committed malpractice or the plaintiff is informed by another attorney of the malpractice. Under the theory of constructive knowledge, however, the statute may begin to run at an earlier date - whenever the plaintiff becomes aware or reasonably should have become aware of facts sufficient to put a reasonable person on notice that an injury has been sustained as a result of the defendant's negligent or wrongful conduct. Id. We have stressed, however, that there is no requirement that the plaintiff actually know the specific type of legal claim he or she has, or that the injury constituted a breach of the appropriate legal standard. Shadrick, 963 S.W.2d at 733. Rather, "the plaintiff is deemed to have discovered the right of action if he is aware of facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct." Carvell, 900 S.W.2d at 29 (quoting Roe v. Jefferson, 875 S.W.2d 653, 657 (Tenn. 1994)). "It is knowledge of facts sufficient to put a plaintiff on notice that an injury has been sustained which is crucial." Stanbury, 953 S.W.2d at 678. A plaintiff may not, of course, delay filing suit until all the injurious effects or consequences of the alleged wrong are actually known to the plaintiff. Shadrick, 963 S.W.2d at 733; Wyatt v. A-Best Company, 910 S.W.2d 851, 855 (Tenn. 1995). Allowing suit to be filed once all the injurious effects and consequences are known would defeat the rationale for the existence of statutes of limitations, which is to avoid the uncertainties and burdens inherent in pursuing and defending stale claims. Wyatt, 910 S.W.2d at 855.

Applying these principles to the record before us, we are persuaded that the lower courts correctly found that the one-year statute of limitations had expired on those claims related to the rollover and contribution of individual retirement account funds to the plaintiffs' profit sharing plan. The plaintiffs suffered an actual injury for purposes of the discovery rule when they began to incur expenses, or at least had to take some action, as a result of the defendants' negligent advice. This would have been on October 19, 1988, when their accountant had to respond to the IRS's request for information after it noted a conflict between the amount reported by the plaintiffs on their tax returns and the amounts reported by payers. The plaintiffs' argument to the contrary notwithstanding, the fact that the IRS had not taken any formal action against the Kohls as of that date, such as filing suit against them or issuing a deficiency notice, is largely irrelevant because, as noted above, it was unnecessary for the plaintiffs to have suffered all the injurious effects or consequences of the defendants' negligence in order for the statute to begin running. Shadrick, 963 S.W.2d at 733; Wyatt, 910 S.W.2d at 855; Sec. Bank & Trust Co. v. Fabricating Inc., 673 S.W.2d 860, 864-65 (Tenn. 1983).

Regarding the discovery rule's knowledge requirement, we conclude that attorney Kolarich's letter of October 24, 1988 to Dearborn & Ewing demonstrates that the plaintiffs knew or should have known there was a potential problem with the rollover and contribution of retirement funds into their profit sharing plan, and that Huffstutter had advised the plaintiffs on these matters. Again, it was unnecessary for the plaintiffs to have been aware that there had been a breach of the appropriate legal standard in order to be deemed to have discovered their right of action, but needed only to be aware of facts sufficient to put them on notice that an injury had been sustained as a result of Huffstutter's advice. Shadrick, 963 S.W.2d at 734; Carvell, 900 S.W.2d at 29. Kolarich's letter establishes that the plaintiffs had notice of a problem with the rollover and contribution of retirement funds into their profit

sharing plan, especially since the letter was sent on the heels of the letter to the Kohls by the IRS.

In sum, we conclude that the statute of limitations as to any claims resulting from the rollover and contribution of retirement funds to the plaintiffs' profit sharing plan began to run on October 24, 1988. The lower courts correctly determined that the one-year statute of limitations found in Tenn. Code Ann. § 28-3-104(a) barred this aspect of the plaintiffs' suit because the plaintiffs did not file their complaint until May 1, 1990. We do not mean to suggest by our holding that the mere routine questioning by the IRS of a tax return is always sufficient by itself to trigger the running of the statute of limitations as a matter of law for a potential legal malpractice action. We recognize that inquiries by governmental agencies into business transactions are routinely conducted. While the inquiry by the IRS in this case was sufficient to satisfy the injury prong of the discovery rule because the plaintiffs had to take some action due to the defendants' negligence at that point, it was not until attorney Kolarich's letter of October 24, 1988 to Dearborn & Ewing that the knowledge prong of the rule was satisfied, thereby triggering the running of the statute.

## II.

Turning to the issue of legal fees, we note that there are three categories of attorney's fees that may constitute damages resulting from legal malpractice: (1) "initial fees" a plaintiff pays or agrees to pay an attorney for legal services that were negligently performed, (2) "corrective fees" incurred by the plaintiff for work performed to correct the problem caused by the negligent lawyer, and (3) "litigation fees," which are legal fees paid by the plaintiff to prosecute the malpractice action against the offending lawyer. The trial court in this case correctly held that

corrective fees were recoverable, and this ruling was not appealed. The trial court's ruling that initial fees were not recoverable was appealed, and the Court of Appeals properly reversed. Both lower courts agreed that the plaintiffs could not recover their legal fees in prosecuting the instant malpractice action. Relying upon <u>Foster v. Duggin</u>, 695 S.W.2d 526 (Tenn. 1985), the plaintiffs contend that this was error. They claim that attorney's fees should be assessed as part of their damages.

In <u>Foster</u>, the plaintiffs retained the defendant as their attorney on a contingency fee basis to represent them in a personal injury action. The attorney failed to timely file the complaint, and the plaintiffs lost their claim. In the subsequent malpractice action against the attorney, the attorney sought to reduce the amount of the judgment against him by the amount of the fee he would have earned had he successfully prosecuted the original case. Thus, the issue before us in <u>Foster</u> was "whether the defendant, an attorney liable for malpractice, is entitled to have the judgment against him reduced by the amount of the legal fee he contracted to receive for litigation he negligently conducted." <u>Foster</u>, 695 S.W.2d at 526. We held that the attorney should be denied any credit for the contingency fee he would have received had he obtained a judgment for his clients. <u>Id</u>. at 527. Thus, the plaintiffs in <u>Foster</u> recovered initial fees in their malpractice suit. We made it clear that we were not awarding the plaintiffs their attorney's fees incurred in pursuing their malpractice claim. <u>Id</u>. at 527. Accordingly, the plaintiffs' reliance upon <u>Foster</u> for the notion that they are entitled to their litigation fees is misplaced.

<u>Foster</u> aside, the plaintiffs argue that they should be entitled to legal fees associated with prosecuting the present action in order to make them whole. They maintain that because such fees are the direct consequence of the malpractice, the fees should be awarded to them as part of their damages.

-10-

Although it is true that there is some authority for the proposition that a negligent attorney is responsible for the reasonable legal expenses incurred by a former client in prosecuting a legal malpractice action, see Bailey v. Pocaro & Pocaro, 701 A.2d 916, 919 (N.J. App. 1997), most jurisdictions that have considered the issue have adhered to the well-established American rule, which provides that attorney's fees may not be awarded to the prevailing party absent statutory authorization or an agreement between the parties so providing. See, e.g., Olson v. Fraase, 421 N.W.2d 820, 828-29 (N.D. 1988); Began v. Dixon, 547 A.2d 620, 624-25 (Del. Super. Ct. 1988); Whitney v. Buttrick, 376 N.W.2d 274, 281 (Minn. App. 1985); Stinson v. Feminist Women's Health Center, 416 So.2d 1183, 1185 (Fla. App. 1982); Sorenson v. Fio Rito, 413 N.E.2d 47, 51-53 (Ill. App. 1980). Tennessee courts have long adhered to the American rule, concluding that an award of attorney's fees as part of the prevailing party's damages is contrary to public policy. See, e.g., Pullman Standard v. Abex Corp., 693 S.W.2d 336, 338 (Tenn. 1985); Gray v. Boyle Inv. Co., 803 S.W.2d 678, 684 (Tenn. App. 1990); John J. Heirigs Constr. Co. v. Exide, 709 S.W.2d 604, 609 (Tenn. App. 1986); Pinney v. Tarpley, 686 S.W.2d 574, 581 (Tenn. App. 1984); Goings v. Aetna Casualty & Sur. Co., 491 S.W.2d 847, 848 (Tenn. App. 1972); Raskind v. Raskind, 325 S.W.2d 617, 625 (Tenn. App. 1959). We are not persuaded that legal malpractice claims should be made an exception to the rule. Without an agreement between the parties or a controlling statute, attorney's fees in legal malpractice suits, as in other litigation, may not be awarded. Accordingly, the lower courts properly declined to award the plaintiffs their legal fees incurred as a result of prosecuting this action.

**CONCLUSION**

The decision of the Court of Appeals is affirmed and the cause remanded to the trial court for any further proceedings which may be necessary.

Cost of this appeal are taxed to the plaintiffs-appellants.

–12–

_____    _____
                                    Frank F. Drowota, III
                                    Justice

**Concur:**

Anderson, C.J.,
Birch, Holder, and Barker, J.J.

     _____

–12–