NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0040n.06
Filed: January 13, 2006

04-6347

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| ALISSA MECHILLE DORTON HUMPHREYS, | ) ) ) | |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE |
| WILLIAM C. ARGABRITE, Esq., and HUNTER, SMITH & DAVIS, LLP, | ) ) ) | |
| Defendants-Appellees. | ) | |

Before: DAUGHTREY, MOORE, and McKEAGUE, Circuit Judges.

**PER CURIAM.** The plaintiff, Alyssa Humphreys, filed this legal malpractice action in September 2003 against defendant William Argabrite, who had represented her in 2000 in the divorce action she filed against her former husband. Because jurisdiction was based on diversity, the district court applied state law and held that the action was barred by Tennessee's one-year statute of limitations, Tenn. Code Ann. § 28-3-104(a)(2), and granted the defendants' motion for summary judgment. The plaintiff appeals, contending that her cause of action did not accrue until she was informed by subsequent counsel in September 20, 2002, that her original attorney, Argabrite, had acted negligently in advising her to agree to the settlement that she and her husband had approved in the uncontested

divorce action two years earlier. Hence, she contends, the statute of limitations did not run prior to the filing of this suit on September 8, 2003. We disagree, because we conclude that under the facts outlined below, the plaintiff had one year from the date that the divorce decree became final in December 2000 in which to file this action against former counsel and that the limitations period ran out in December 2001, almost two years before suit was filed. We therefore affirm the district court's judgment in favor of the defendants.

In March 2000, in contemplation of a divorce from Danny Humphreys, her husband of 16 years, Alyssa Humphreys contacted attorney William Argabrite, a Kingsport attorney who had earlier prepared the couple's wills and assisted them in some business matters, and asked him to refer her to a competent divorce attorney. Although Argabrite had little experience in handling divorce cases, he eventually became plaintiff's sole attorney in the divorce proceedings. His job was made easier by the fact that, prior to meeting with Argabrite, Alyssa and Danny Humphreys had mutually agreed that they would split the marital assets equally, providing Alyssa with certain real and personal property, and that she would have primary custody of their two children. They had also agreed that the plaintiff would receive $10 million in cash, representing her one-half share of the couple's financial interests in the various Humphreys family's coal companies, with the understanding that she would not insist upon a professional appraisal of the value of those companies. It was also understood that the $10 million would be paid out in annual installments and would not carry interest. Later testimony indicated that $10 million may well have been an over-estimate of the plaintiff's interest in the family holdings.

In any event, based upon this initial agreement, Argabrite negotiated a marital dissolution agreement for plaintiff, and on December 12, 2000, the Chancery Court for Washington County, Tennessee, approved the agreement and granted Alyssa Humphreys a judgment of divorce. The decree essentially incorporated the couple's original agreement, with one exception: while they had not initially contemplated that Danny Humphreys would pay child support, under state law it had to be included in the judgment. As a result, he was ordered to pay $50,000 a year in child support, an amount that figured out to a percentage of his annual income well below that provided by the Tennessee child support guidelines, but also an amount well above the highest quantity listed on the schedule. Moreover, under the marital dissolution agreement, Alyssa Humphreys received approximately $7 million worth of unencumbered assets, including the family home and cars, plus the settlement of $10 million, to be paid out without interest over a period of 15 years. For Argabrite's work negotiating the agreement, the plaintiff paid him approximately $70,600 in attorney's fees. She also gave him an $8,000 "tip" to express her appreciation, intending the money for the purchase of a set of golf clubs.

The payment on the $10 million settlement amounted to $666,667 per year, which Danny Humphreys arranged to make from the proceeds of a $6.5 million annuity that he purchased. When plaintiff was informed, during negotiations, that her husband would pay only $6.5 million for the annuity, she asked Argabrite, "Where is my other $3.5 million?" To this question her attorney replied, "Why do you care how he pays for it, Alyssa, as long as you get what you want?" Plaintiff testified that she "told Mr. Argabrite that this was very

shrewd of Danny [Humphreys] to come up with an idea like [paying via a $6.5 million annuity] and [she] couldn't help but feel that [she] was losing $3.5 million." She nevertheless agreed to the annual payments at the time that the marital agreement was signed. She also agreed to forego interest on the annual payments, having previously informed Argabrite and her then-husband that she didn't need to receive interest on the $10 million because she "could invest it and make [her] own interest."

The marital dissolution agreement did not provide for alimony. Humphreys admits that she knew, before the divorce was finalized, that there was no alimony provision but claims that, when she asked Argabrite about it, he told her, "You don't want alimony, you'll have to pay taxes on it."

Almost two years later, in September 2002, the plaintiff met with Steven Raynor, an attorney in Virginia, seeking advice on whether she could move out of Tennessee with the children. After learning the details of the marital dissolution agreement, Raynor told Humphreys that he thought Argabrite had been negligent in his representation of her. Humphreys later claimed that prior to meeting with Raynor, she believed that Argabrite had done a good job of representing her. However, based on her conversations with Raynor, she contacted a malpractice attorney and, on September 8, 2003, filed a malpractice claim against Argabrite and his law firm in federal district court. In her complaint, the plaintiff alleged that Argabrite acted negligently with regard to alimony, child support, and the $10 million interest-free settlement provision. The district court granted summary judgment to

defendants on the ground that the complaint was time-barred by Tennessee's one-year statute of limitations applicable to legal malpractice claims.

On appeal, Humphreys claims that the one-year period did not begin to run until September 20, 2002, when Humphreys first learned from Raynor that Argabrite might have committed malpractice. Tennessee courts apply a "discovery rule" in determining when a legal malpractice action accrues for limitation purposes. "[T]he 'legal malpractice discovery rule' is composed of two distinct elements: (1) the plaintiff must suffer . . . an 'irremediable injury' as a result of the defendant's negligence; and (2) the plaintiff must have known or in the exercise of reasonable diligence should have known that this injury was caused by defendant's negligence." *Carvell v. Bottoms*, 900 S.W.2d 23, 28 (Tenn. 1995). The plaintiff argues that, pursuant to the second prong of the test, she did not know that she had suffered an injury until she met with Raynor in September 2002.

The district court properly granted summary judgment to the defendants in this case because there are no genuine issues with regard to the material facts and the defendants are entitled to a judgment as a matter of law. Taken in the light most favorable to the plaintiff, the evidence shows, as the district court ably explained, that the plaintiff's malpractice claim accrued at the time the divorce decree was entered because she knew or should have known of her injury at that point. Concerning the statute of limitations for legal malpractice claims, the Tennessee Supreme Court has held that:

> [The knowledge prong of the "discovery rule" is met] whenever the plaintiff becomes aware or reasonably should have become aware of facts sufficient to put a reasonable person on notice that an injury has been sustained as a result of the defendant's negligent or wrongful conduct. We have stressed, however, that there is no requirement that the plaintiff actually know the specific type of legal claim he or she has, or that the injury constituted a breach of the appropriate legal standard. Rather, the plaintiff is deemed to have discovered the right of action if he is aware of facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct. It is knowledge of facts sufficient to put a plaintiff on notice that an injury has been sustained which is crucial. A plaintiff may not, of course, delay filing suit until all the injurious effects or consequences of the alleged wrong are actually known to the plaintiff.

*John Kohl & Co., P.C. v. Dearborn & Ewing*, 977 S.W.2d 528, 532-33 (Tenn. 1998) (internal quotations and citations omitted). The district court opinion details the ways in which the plaintiff's testimony indicated that, well before her conversation with Raynor – indeed, even before the divorce became final – she had full knowledge of the facts that she now contends reflect negligence on the part of the defendant. The plaintiff knew, for example, the relevant details of her divorce settlement at the time the divorce was granted. She testified that she at one point asked Argabrite about alimony, but she conceded knowledge that she was not awarded any alimony under the marital dissolution agreement. Her testimony further demonstrates that she was aware that her ex-husband would be paying much less in child support than the percentage recommended by the Tennessee child support guidelines. Finally, the plaintiff argues that she never realized that, because the $10 million settlement was to be paid out over the course of 15 years without interest, she would not receive the equivalent in value of a $10 million lump sum. But her testimony clearly established her understanding that Danny Humphreys had arranged to purchase

a $6.5 million annuity that would be used to fund annual payments to her and, thus, that the immediate value of her award was only $6.5 million.

As the Tennessee Supreme Court held in *John Kohl*, "it was unnecessary for the [plaintiff] to have been aware that there had been a breach of the appropriate legal standard in order to be deemed to have discovered [her] right of action." *Id.* at 533. Rather, she "needed only to be aware of facts sufficient to put [her] on notice that an injury had been sustained as a result of [the attorney's] advice." *Id.*

On appeal, the plaintiff makes much of the fact that she had only an associate degree in arts, had very limited work experience, and had never been through a divorce before; she argues that she could not be expected to understand complex concepts such as the future versus present value of money and thus had to rely completely on what Argabrite told her. Her testimony reveals, however, that she understood the general financial and legal concepts at issue and was fully cognizant of the facts giving rise to those concepts. As we noted above, under Tennessee law "[t]he statute of limitations begins to run when the client discovers, or by reasonable diligence should have discovered, the injury." *Cherry v. Williams*, 36 S.W.3d 78, 85 (Tenn. Ct. App. 2000). Hence, the district court correctly found that it was faced with "a situation like that described in *Cherry* where, regardless of the plaintiff's reliance on erroneous legal advice, the plaintiff had knowledge of the facts from which a reasonable person would be put on notice that she has suffered an injury as a result of the defendant's wrongful conduct."

Like the district court, we conclude that the statute of limitations in this case had run and that the malpractice action filed by Alyssa Humphreys is time-barred.  We therefore AFFIRM the judgment of the district court entered in the defendants' favor.