IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 23, 2015 Session


**EMMA JEAN ANDERSON v. JAMES KENNETH LOWRY, ET AL.**


**Appeal from the Chancery Court for Putnam County**
**No. 2011290     Ronald Thurman, Judge**

_____


**No. M2014-01107-COA-R3-CV – Filed December 30, 2015**
_____


This appeal originated from a boundary line dispute between adjacent landowners.  In this boundary line dispute, the trial court: (1) determined the boundary line that divides the parties' properties; (2) awarded treble damages to Appellee for timber that had been removed from the disputed property by the Appellant; (3) set aside the quitclaim deed recorded the day before the trial by Appellant as a fraudulent conveyance; and (4) awarded attorney fees to Appellee for the expenses incurred in prosecuting the petition to set aside the quitclaim deed as a fraudulent conveyance.  We affirm in part, reverse in part, and remand for further proceedings in accordance with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed in Part, Reversed in Part, and Remanded.**

KENNY ARMSTRONG, J., delivered the opinion of the Court, in which ANDY D. BENNETT, and BRANDON O. GIBSON, JJ., joined.

Brian O. Bowhan, Smyrna, Tennessee, for the appellant, James Kenneth Lowry.

William D. Birdwell, Cookeville, Tennessee, for the appellee, Emma Jean Anderson.


**OPINION**


I.     **Background and Procedural History**


1

On July 15, 2011, Appellee Emma Jean Anderson filed a complaint against the Appellant James Kenneth Lowry. In her complaint, Ms. Anderson sought a determination of the common boundary line between the parties' properties and to quiet title. In addition, Ms. Anderson sought damages for timber that Mr. Lowry had removed from the disputed 4.39 acre tract of land,[1] of which she claimed to be the owner.[2]

The trial court found, by clear and convincing evidence, that the survey commissioned by Ms. Anderson in 2010 contained the correct boundary line. The proof established that Mr. Lowry removed the boundary fence between the Anderson land and the Lowry land. The trial court found the removal of the fence to be a willful act and awarded Ms. Anderson $600 in damages for destruction of the fence. Regarding Mr. Lowry's decision to cut timber that belonged to Ms. Anderson, the trial court specifically held that "[t]his was not a negligent cutting of timber but a knowing and intentional cutting because the [Lowry's] deed described the boundary as the fence." The trial court also made a specific finding that Ms. Anderson's expert, who testified as to the value of the timber cut, was a credible witness. Accordingly, the trial court adopted Ms. Anderson's expert's value of $10,000 for the timber. Due to the knowing and intentional nature of Mr. Lowry's actions, the trial court awarded treble

---

[1] Ms. Anderson's complaint describes the disputed property as a 4.32 acre tract of land. However, the survey adopted by the trial court indicates that the property in question is actually a 4.39 acre tract of land.

[2] The trial court consolidated this case with another case involving Mary and TJ Bennett. Mr. and Mrs. Bennett own property adjacent to the property of Mr. Lowry and Ms. Anderson, and the trial court found that a determination of the property boundary between the Bennetts, Lowrys, and Ms. Anderson was material to both cases. The Bennetts are not parties to this appeal.

damages in accordance with Tennessee Code Annotated section 43-28-312 (b).

The trial court entered its order on August 28, 2013, and on September 11, 2013, Mr. and Mrs. Lowry filed a Tennessee Rule of Civil Procedure 59 motion to alter or amend judgment. In their motion, the Lowrys alleged that the trial court entered a judgment against Susan Lowry, even though she was not named as a party in Ms. Anderson's complaint. The Lowrys also alleged in their motion that Mr. Lowry did not "knowingly and intentionally" cut Ms. Anderson's timber, and, therefore, the trial court should not have awarded treble damages. The Lowrys further argued that the trial court should have placed some responsibility for damages on the woodcutter, as Tennessee Code Annotated section 43-28-312 provides for joint liability. Finally, the Lowrys argued that the trial court erred in valuing the timber and in awarding Ms. Anderson the replacement cost of the boundary fence. On November 4, 2013, before a hearing on the Rule 59 motion, the Lowrys filed a Tennessee Rule of Civil Procedure 60 motion for relief from judgment in which they reiterated their Rule 59 argument that the judgment was erroneously entered against Mrs. Lowry, who was not a party to the lawsuit.

On March 20, 2014, pursuant to Tennessee Rule of Civil Procedure 15.02, Ms. Anderson filed a motion to amend her pleadings to conform to the evidence and judgment of the court in an attempt to add Mrs. Lowry to her complaint. On April 17, 2014, the trial court entered an order denying Ms. Anderson's Rule 15 motion on grounds that rule 15.02 does not contemplate adding an individual as a party to a pleading following trial. The trial court

3

granted the Lowrys' Rule 60 motion and Rule 59 motion as to the judgment against Mrs. Lowry. Specifically, the trial court amended its August 28, 2013 order to constitute a judgment against Mr. Lowry only. The trial court denied the Lowrys' motions in all other respects. Finally, the trial court issued a restraining order enjoining the Lowrys from transferring, encumbering, or perfecting a lien on their real property pending resolution of the fraudulent conveyance issue raised by Ms. Anderson during oral argument.

On August 20, 2013, one day before the trial of this case, Mr. Lowry recorded a quitclaim deed transferring his property to himself and his wife. On July 24, 2014, Ms. Anderson filed a petition against the Lowrys to set aside this quitclaim deed as a fraudulent conveyance. The petition alleged that the execution and recording of the quitclaim deed, conveying the subject property to James Kenneth Lowry and his wife Susan Lowry as an estate by the entireties, constituted a conveyance in fraud of creditors pursuant to Tennessee Code Annotated section 63-3-101.

On February 3, 2015, the trial court awarded a default judgment in favor of Ms. Anderson against the Lowrys for the fraudulent conveyance of the property at issue. The trial court specifically found that the quitclaim deed recorded the day prior to trial to be "clearly and utterly void." Additionally, the trial court awarded a judgment against Mr. and Mrs. Lowry in the amount of $8,200 for attorney's fees and expenses incurred by Ms. Anderson in the prosecution of the fraudulent conveyance petition.

## II. Issues

Appellant presents the following issues on appeal as stated in his brief:

1. Whether appellant is liable for double or treble damages for cutting the appellee's trees.
2. Whether the appellee is entitled to damages based on the gross market value of the trees, or whether the damages must be calculated based on the net market value of the trees, the amount appellee would have received from a voluntary sale.
3. Whether the appellant is only jointly liable and not completely or severally liable for the cutting of the timber.
4. Whether attorney's fees are appropriate in a fraudulent conveyance issue.

## III.    Standard of Review

To the extent that these issues involve questions of fact, our review of the trial court's ruling is *de novo* with a presumption of correctness.  Accordingly, we may not reverse these findings unless they are contrary to the preponderance of the evidence. *See, e.g., Randolph v. Randolph*, 937 S.W.2d 815, 819 (Tenn. 1996); T.R.A.P. 13(d).  With respect to the trial court's legal conclusions, however, our review is *de novo* with no presumption of correctness. *Southern Constructors, Inc. v. Loudon Cnty. Bd. of Educ.,* 58 S.W.3d 706, 710 (Tenn. 2001); *Mix v. Miller*, 27 S.W.3d 508, 511 (Tenn. Ct. App. 1999).  We may only overturn the judgment of the trial court if there was an error of law or the preponderance of the evidence is otherwise. *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). "Statutory interpretation is a question of law, which we review *de novo,* with no presumption of correctness given to the courts below." *Sullivan v. Edwards Oil Co.,* 141 S.W.3d 544, 547 (Tenn. 2004) (citing *Wallace v. State,* 121 S.W.3d 652, 656 (Tenn. 2003)).

## IV.    Analysis

## A. Damages

Mr. Lowry argues that the trial court erred by assessing treble damages for cutting Ms. Anderson's timber. Tennessee Code Annotated section 43-28-312 governs wrongfully cutting the timber of another. The statute states as follows:

> (a)(1) Civil liability for the negligent cutting of timber from the property of another is in an amount double that of the current market value of the timber.
> (2) If the timber is negligently cut from the property of another because the landowner for whom the timber is being cut has marked or designated the boundary of the landowner's property incorrectly, then the landowner is jointly liable for the double damages.
> (b) Civil liability for knowingly and intentionally cutting timber from the property of another is in an amount treble that of the current market value of the timber.

Tenn. Code Ann. § 43-28-312. Although Mr. Lowry concedes that he cut timber from land the trial court found belonged to Ms. Anderson, he argues that he had a valid survey indicating that the land in question belonged to him. Therefore, Mr. Lowry argues that he should only be liable for double the current market value of the timber pursuant to section 43-28-312(a)(1). In support of his contention, Mr. Lowry cites the case of *Mix v. Miller*, 27 S.W. 3d 508, 515 (Tenn. Ct. App. 1999). In *Mix*, the family cut timber from their neighbor's property in reliance on a recent survey of their land. In *Mix*, this Court found no evidence to suggest "that the Mixes acted with the intent to deprive the Millers of their property." *Id.* Under those circumstances, we held that the removal of the timber was negligent rather than intentional. *Id.* at 516.

6

There are several factors that distinguish this case from the *Mix* case. Here, the trial court made a specific finding that Mr. Lowry acted with intent to deprive Ms. Anderson of her property. In its ruling, the trial court stated: "This was not a negligent cutting of timber but a knowing and intentional cutting because the Lowrys' deed described the boundary as the fence. This fence was removed."

Ms. Anderson hired Chris Vick to survey her property in April 2010. Mr. Vick testified that on April 13, 2010, while surveying the northwest portion of Ms. Anderson's property, he met Mrs. Lowry in the proximity of the disputed 4.39 acre tract. After exchanging introductions, Mrs. Lowry told Mr. Vick that the fence line was not the boundary line of the Anderson property and instructed him not to tie ribbons there. Mr. Vick noted the existence of a fence and did not see any evidence of logging in the disputed acreage. The next day when Mr. Vick came back to complete his survey, Mrs. Lowry asked him to leave and not come back. As a result, Mr. Vick was unable to complete his survey of the Anderson land until he obtained a court order in September of 2010. On September 23, 2010, Mr. Vick returned, escorted by sheriff's deputies, to complete his survey. At that time, Mr. Vick observed that the fence had been removed. Mr. Vick also observed evidence of logging and bulldozing in the area. Thus, it is undisputed that Mr. Lowry cut the trees from the Anderson property after receiving notice that there was a question regarding the ownership of the 4.39 acre tract of land adjacent to his property. Additionally, a deed on the Lowry property recorded in 2000 clearly describes the Anderson family as owners of the land east of the road

7

and that the Anderson land includes the 4.39 acre tract in dispute. Thus, we conclude from our review of the record that the preponderance of the evidence supports the trial court's finding that Mr. Lowry knowingly and intentionally cut Ms. Anderson's timber. Therefore, pursuant to Tennessee Code Annotated section 43-28-312, the trial court did not err in awarding damages "in an amount treble that of the current market value of the timber."

Mr. Lowry also argues that he should only be jointly liable and not completely or severally liable for cutting Ms. Anderson's timber, noting that Ms. Anderson also sued his surveyor and his woodcutter.[3] In support of his argument, Mr. Lowry relies on the following statute provision:

> (2) If the timber is negligently cut from the property of another because the landowner for whom the timber is being cut has marked or designated the boundary of the landowner's property incorrectly, then the landowner is jointly liable for the double damages.

Tenn. Code Ann. § 43-28-312(a)(2). This provision, however, is inapplicable here because it refers to the negligent cutting of timber from the property of another. Pursuant to our prior determination that Mr. Lowry knowingly and intentionally cut Ms. Anderson's timber, we conclude that his argument on this issue is without merit. Before contracting with his woodcutter and his surveyor, Mr. Lowry was on notice that Ms. Anderson was claiming ownership of the 4.39 acre tract and had hired a surveyor to establish the boundary lines of her property.

---

[3] Ms. Anderson entered a notice of voluntary non-suit as to both the surveyor and the woodcutter on the day of trial.

## B. Determining the Value of the Timber

In determining the value of the timber cut from Ms. Anderson's property, Mr. Lowry argues that the trial court should have based damages on the net market value of the trees, deducting the cost of the woodcutting from the gross amount of the sale. Tennessee Code Annotated section 43-28-312 mandates that the damages must be based on current value. Ronnie Tucker, an expert logger for thirty-four years, testified on behalf of Ms. Anderson as to the value of the timber. Mr. Tucker contracts directly with landowners to buy timber. He then contracts with a saw mill to sell the timber. Typically, Mr. Tucker uses two methods to buy timber. In the first method, he makes a bid for the standing timber based on his estimate of the current market value. The second method involves harvesting the lumber, selling it to the mill, and dividing the gross proceeds with the landowner. Mr. Tucker determined the value of the timber cut from Ms. Anderson's land by surveying the stumps left and taking an inventory of the density of the trees. He used that information and applied the December 2010 market price in his determination that Ms. Anderson's timber had a market value of $10,000.

In support of its finding that Ms. Anderson's timber was valued at $10,000.00, the trial court made a specific finding that Mr. Tucker was a credible expert witness. When it comes to live, in-court witnesses, appellate courts should afford trial courts considerable deference when reviewing issues that hinge on the witnesses' credibility because trial courts are "uniquely positioned to observe the demeanor and conduct of witnesses." ***State v.***

9

*Binette,* 33 S.W.3d 215, 217 (Tenn. 2000). "[A]ppellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary." *Wells v. Tennessee Bd. of Regents,* 9 S.W.3d 779, 783 (Tenn. 1999); *see also Hughes v. Metro. Gov't of Nashville & Davidson Cnty.,* 340 S.W.3d 352, 360 (Tenn. 2011). *Kelly v. Kelly*, 445 S.W.3d 685, 692-93 (Tenn. 2014). With regard to expert testimony, the Tennessee Supreme Court has determined that "questions pertaining to the qualifications, admissibility, relevancy, and competency of expert testimony are matters left to the trial court's discretion." *Brown v. Crown Equip. Corp.*, 181 S.W.3d 268, 273 (Tenn. 2005) (citing *McDaniel v. CSX Transportation, Inc.,* 955 S.W.2d 257, 263 (Tenn.1997)).

Mr. Lowry argues that a value that does not include the cost of the wood cutter's services is a windfall to the landowner. However, in this case, the only evidence in the record is the undisputed testimony of Ronnie Tucker. Mr. Tucker specifically testified that in December 2010, a reasonable buyer would pay a reasonable seller $10,000 for Ms. Anderson's timber. Mr. Lowry argues in his Rule 59 motion that Mr. Tucker must have "misstated that amount of payment." However, there is nothing in the record to either refute Mr. Tucker's testimony or to support Mr. Lowry's argument that Mr. Tucker was mistaken. Therefore, we conclude that the findings of the trial court are supported by a preponderance of the evidence.

### C. Attorney's fees

Mr. Lowry argues that the trial court erred in awarding Ms. Anderson a judgment in

the amount of $8,200 for attorney fees and expenses incurred in prosecuting her petition to set aside Mr. Lowry's quitclaim deed as a fraudulent conveyance. Mr. Lowry argues that the trial court's award of attorney's fees must be vacated because there is no case authority supporting such an award.

Ms. Anderson responds that *Tennessee United Paint Store, Inc. v. D. H. Overmyer Warehouse Co.*, 62 Tenn. App. 721, 467 S.W.2d 806 (1971) supports her judgment for attorney's fees. In *Tennessee United Paint Store*, this Court held that where the Appellee creates or preserves assets for the benefit of creditors, the trial court may award attorney's fees incurred in prosecuting the creditor's bill, even when the statute did not specifically authorize attorney's fees. *Id.* at 809. Similarly, in *Pennington et al v. Divney,* 182 Tenn. 207, 185 S.W.2d 514 (1945), complainants brought suit on behalf of themselves, and other creditors of the defendant, and sought to set aside, as fraudulent and void, a conveyance of real estate. The Tennessee Supreme Court held the sale void and ordered a sale of the realty for the payment of creditors. The Court also granted attorney's fees, although noting that the statute made no specific provision for the allowance of attorney's fees. *Id.* 185 S.W.2d at 516.

In both *Tenn. United Paint Store* and *Pennington*, funds were recovered on behalf of the complainants and others. The attorney's fees were then paid from the recovered funds. This common fund doctrine is an exception to the general rule that attorneys in Tennessee must generally look only to their own client for their fees. *See Remco Equip. Sales, Inc. v.*

*Manz,* 952 S.W.2d 437, 439 (Tenn. Ct. App.1997). This doctrine applies when the attorney "has succeeded in securing, augmenting, or preserving property or a fund of money in which other people are entitled to share in common." ***Travelers Ins. Co. v. Williams,*** 541 S.W.2d 587, 589–90 (Tenn.1976). In such a case, the attorney may oblige the beneficiaries of the fund or property to contribute to his or her fee by assessing that fee directly against the fund or property itself. ***Shamblin v. Sylvester***, 304 S.W.3d 320, 328-29 (Tenn. Ct. App. 2009). "The common fund doctrine can be invoked only when there is a fund within the court's jurisdiction from which fees can be awarded." ***Roberts v. Sanders***, 2002 WL 256740 *11 (Tenn. Ct. App. Feb. 22, 2002). In this case, there is no "common fund," and there are no other parties entitled to share in the damages, as they are awarded solely to Ms. Anderson. Thus, it does not appear that ***Tenn. United Paint Store*** or ***Pennington*** applies.

Tennessee, along with many other states, adheres to the "American rule" for award of attorney's fees. ***Cracker Barrel Old Country Store, Inc. v. Epperson***, 284 S.W.3d 303, 308 (Tenn. 2009); ***John Kohl & Co. v. Dearborn & Ewing,*** 977 S.W.2d 528, 534 (Tenn. 1998); ***Pullman Standard, Inc. v. Abex Corp.,*** 693 S.W.2d 336, 338 (Tenn. 1985). Under the American rule, a party in a civil action may recover attorney fees only if: (1) a contractual or statutory provision creates a right to recover attorney fees; or (2) some other recognized exception to the American rule applies, allowing for recovery of such fees in a particular case. ***Cracker Barrel Old Country Store, Inc.***, 284 S.W.3d at 308 (Tenn. 2009); ***Taylor v. Fezell,*** 158 S.W.3d 352, 359 (Tenn. 2005); ***John Kohl,*** 977 S.W.2d at 534.

12

Tennessee Code Annotated section 29-12-101 determines the proper procedure to rectify a fraudulent conveyance. The statute provides:

> Any creditor, without first having obtained a judgment at law, may file the bill in chancery for the creditor, or for the creditor and other creditors, to set aside fraudulent conveyances of property, or other devices resorted to for the purpose of hindering and delaying creditors, and subject the property, by sale or otherwise, to the satisfaction of the debt.

Tenn. Code Ann. § 29-12-101 (West). The statute does not contain any provision for recovery of attorney's fees. While we concede that the trial court was attempting to make an innocent party whole after a long and arduous litigation, this is insufficient, as a matter of law, to support the trial court's award of attorney's fees. Accordingly, we reverse the trial court's award of attorney's fees to Ms. Anderson.

## V. Conclusion

For the foregoing reasons, we affirm trial court's order with regard to the amount of damages awarded to Ms. Anderson. We reverse the trial court's order requiring Mr. Lowry to pay Ms. Anderson's attorney's fees in the amount of $8,200. We remand the case for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed against Appellant, James Kenneth Lowry and his surety, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE