IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 14, 2025 Session

**JAY MACE, ET AL. v. NANCY R. HELTON, ET AL.**

**Appeal from the Chancery Court for Hamilton County**
**No. 23-0783   Jeffrey M. Atherton, Chancellor**

_____

**No. E2024-01033-COA-R3-CV**

_____

The tenants appeal from the judgment in this action involving a lease with a purchase option for real property.  We vacate the attorney fee award to the landlords.  We affirm the trial court's order in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed in part, Reversed in part; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which THOMAS R. FRIERSON, II, and KRISTI M. DAVIS, JJ., joined.

Peter C. Ensign, Chattanooga, Tennessee, for the appellants, Jay Mace and Janice Mace.

Caleb Jackson Smith and Barry L. Abbott, Chattanooga, Tennessee, for the appellees, Nancy R. Helton and Adam Helton.

**MEMORANDUM OPINION[1]**

**I.      BACKGROUND**

On May 3, 2019, Plaintiffs-Appellants Jay and Janice Mace ("Plaintiffs") executed

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value.  When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

a "Lease with Option to Buy" with the late Bud Helton and his wife, Defendant-Appellee, Nancy Helton. Plaintiffs were the tenants of the real property, and the Heltons were the landlords. The real property consisted of two parcels with a large 1930s building. The lease term was May 1, 2019, to May 1, 2024. The lease required a down payment of $5,000 as consideration for the Plaintiffs' option to purchase the property at any time during the lease term for $900,000. The lease set monthly rent payments of $3,000 beginning on June 1, 2019. The lease required Plaintiffs to pay the property tax, utilities, stormwater fees, other fees, and liability insurance premiums. Any payment over five days late would constitute "an automatic event of default" under the lease terms. Paragraph 6 of the lease provided:

> DEFAULT. If any default in any of the terms and conditions, performance or compliance, this lease, at the option of the Lessors shall terminate and be forfeited and Lessors may re-enter and remove all persons there from. Upon Lessee's default, all monies paid under this Lease shall be forfeited and be retained by, or for the benefit of, Lessors. Further, Lessees shall be liable for the remainder of rent due on the lease, any damages to the property, plus all taxes, reasonable attorney fees and court costs incurred by Lessors.

After Bud Helton passed away, his and Nancy's son, Defendant-Appellee Adam Helton, became Nancy's attorney-in-fact. Adam Helton determined that Plaintiffs owed $50,295.77 for past due rent and property taxes. Upon his demand, Plaintiffs paid the delinquency.[2]

On October 24, 2023, the Heltons, through counsel, sent a "Notice to Vacate/Termination of Lease" to Plaintiffs. The Heltons stated that Plaintiffs were in default and that they were terminating the lease because of:

> (1) repeated failure to timely and fully pay rent and late fees, including for the month of October 2023; (2) repeated failure to pay the property taxes; (3) repeated failure to pay the stormwater fees; (4) repeated failure to carry and provide the [Heltons] proof that you have insurance on the property with the [Heltons] named as additional insured; and (5) failure to remove the homeless encampment on the property in violation of [the lease].

The Heltons filed a detainer action in the General Sessions Court of Hamilton County. The detainer action was subsequently consolidated with the separate lawsuit filed by Plaintiffs on November 27, 2023, in the Chancery Court for Hamilton County ("trial court").

---

[2] It is unclear from the record whether this payment was made in May 2022 or May 2023. The parties agree that the full delinquency was paid.

In their November 27, 2023 complaint, Plaintiffs requested specific performance under the lease, enforcement of the purchase option, and entry of an order compelling the Heltons to close on the sale of the property to them. Plaintiffs averred that "all payments are current up to November 2023." Plaintiffs alleged that they "made nearly $300,000.00 worth of repairs to the property, as well as paying rent, taxes, and stormwater fees of nearly $200,000.00." Plaintiffs also alleged that the Heltons breached the lease by not closing on the sale of the property despite Plaintiffs' attempts to pay the $900,000 purchase price to Nancy Helton "on several occasions." Finally, Plaintiffs alleged that Adam Helton had tortiously interfered with the contract between them and Bud and Nancy Helton by refusing "to provide Plaintiffs documentation needed to complete their purchase of the property with the intent to sell the property for significantly more than his parents had agreed to sell it to the Plaintiffs."

In their April 23, 2024 amended answer to Plaintiffs' complaint, the Heltons generally denied all claims. Additionally, the Heltons asserted a counterclaim for breach of contract/unlawful detainer. The Heltons requested immediate possession of the property, attorney fees, and for the trial court to order that Plaintiffs "have no right, title, interest, or option to purchase the property." As damages, the Heltons requested rent payments through the end of the lease term, payment for 2022 property taxes, payment for prorated 2023 property taxes, and payment for property damage and destruction. The Heltons took the position that they properly terminated Plaintiffs' lease through the October 24, 2023 notice which effectively terminated "both [Plaintiffs'] leasehold interest in the property and their option to purchase the property." For their part, Plaintiffs cited the parties' course of conduct when Bud Helton was alive and when Adam Helton took over the lease. For instance, Plaintiffs noted that after remitting $50,295.77 to Adam Helton they were late at least two more times on payments as well as on 2022 property taxes, yet the Heltons never terminated the lease nor sent notice stating what was due. Plaintiffs further averred that Adam Helton refused to exercise good faith and fair dealing when Plaintiffs received an offer from a potential buyer in 2023 and when he refused to inform them how much was owed for stormwater fees and property taxes in 2023. Plaintiffs maintained that they were ready to exercise their option to purchase the property for $900,000.

The case proceeded to an April 30, 2024, bench trial at which Jay Mace, Adam Helton, and two other witnesses testified. The appellate record does not contain a full trial transcript, but does contain an excerpt of Jay Mace's testimony, the executed lease, and a copy of a $5,000 check dated May 3, 2019, from Jay Mace to Bud Helton for "Lease Purchase Deposit." At trial, the Heltons conceded that the payoff for the purchase option was $895,000. The record also contains a transcript of the trial court's oral ruling. The trial court found:

> I was kind of waiting to see what written communication there had been between the [Heltons] and the [Plaintiffs] prior to the notice to vacate . . . and

I didn't get it. . . . [T]here is an implied obligation of reasonableness, and in any contract there is a certain mitigation of damages element that you have to consider. And I didn't see anything, at least in writing, concerning the— well, prior to the . . . notice to vacate.

. . .

The one term that I do have defined in the lease itself is that the lease period is [the] first day of May 2019 continuing until May 1st, 2024. . . . I'm not sure if – if the [lease's] default provisions, if I were to enforce them, would still exclude the opportunity to exercise the purchase option because [the lease term] is one of the few terms that is adequately clear.

. . .

So, judgment to [Plaintiffs] with regard to specific performance, yes. Judgment to the [Heltons] on the counterclaim with regard to outstanding expenses.

. . .

And the [Heltons] get attorney's fees for the need to prosecute this action under the circumstances.

The court found that the three-page lease contained "a host of undefined terms" which must be construed against the Heltons because Bud Helton drafted the lease. The trial court ruled that Plaintiffs could still exercise their option to purchase the property and ordered the Heltons to close on the sale of the property the following day, which was the final day of the lease term, if Plaintiffs tendered the purchase price. The Heltons and Plaintiffs lodged an amended agreed judgment and the trial court entered it on June 27, 2024. The trial court incorporated its ruling from the bench and entered judgment as follows:

- In favor of the Heltons on Plaintiffs' breach of contract claim in the total amount of $77,877.09 consisting of $28,559.94 for reimbursement of property taxes for years 2022 and 2023, plus $21,000 for unpaid rent through the date of trial, plus $28,317.15 for the Heltons' attorney fees and expenses;
- In favor of the Heltons on Plaintiffs' claim of tortious interference with a contract;
- In Plaintiffs' favor on the Heltons' claim of unlawful detainer; and
- In Plaintiffs' favor on their claim for specific performance.

Plaintiffs did not dispute the amount of attorney fees but reserved their right to appeal the award. Plaintiffs did not file any post-trial motions such as a motion to alter or amend the judgment. In the end, the parties closed on Plaintiffs' purchase of the property. Plaintiffs timely appealed.

## II. ISSUES

Plaintiffs raise two issues for review:

A. Whether the trial court's ruling was inconsistent.

B. Whether the trial court erred by failing to rule upon Plaintiffs' claim of tortious interference with business dealings.

As appellees, the Heltons raise the following issue:

C. Whether the Heltons are entitled to reasonable attorney fees and expenses incurred on appeal.

## III. STANDARD OF REVIEW

We review a non-jury case de novo upon the record, with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). This presumption of correctness applies only to findings of fact and not to conclusions of law. *Campbell v. Fla. Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996). "In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006). The trial court's conclusions of law are subject to a de novo review with no presumption of correctness. *Blackburn v. Blackburn*, 270 S.W.3d 42, 47 (Tenn. 2008); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Morrison v. Allen*, 338 S.W.3d 417, 426 (Tenn. 2011). This is because the trial court alone had the opportunity to observe the appearance and demeanor of the witnesses. *Royal Ins. Co. v. Alliance Ins. Co.*, 690 S.W.2d 541, 543 (Tenn. Ct. App. 1985).

## IV. DISCUSSION

### A. & C.

As a threshold issue, the Heltons assert Plaintiffs waived both issues raised on appeal pursuant to Tennessee Rule of Appellate Procedure 27 because they failed to properly cite to the record and omitted other necessary components of their appellate brief.

Upon review, we do not find Plaintiffs' brief to be so deficient as to warrant waiver and exercise our discretion to consider their arguments on their merits. The Heltons also contend that Plaintiffs failed to present their issues to the trial court so they are not preserved on appeal. In this specific instance, we conclude that the amended agreed judgment's language stating that, "the Plaintiffs approved this order reserving the right to appeal the award of attorney's fees to the Defendants in this case" adequately preserved their challenge to the attorney fee award for appeal. Below, we will also address Plaintiffs' second issue on its merits.

On appeal, Plaintiffs argue that the trial court's "ruling was inconsistent in that [it] allowed [Plaintiffs] to perform under the terms of the lease, but also awarded the Heltons attorney fees as if [Plaintiffs] defaulted under the lease." The Heltons respond that the lease was supported by its own consideration in the form of rent payments, while the option had its own consideration in the form of a $5,000 deposit. The Heltons assert that, therefore, the lease and the option "were both separate and severable because they were supported by independent consideration." In the Heltons' view, the trial court's judgment was that Plaintiffs' breach of the lease did not automatically terminate the option, so it is a consistent judgment.

As our Supreme Court has stated:

Tennessee has long followed the "American Rule" with regard to attorney's fees. This Rule provides that "a party in a civil action may recover attorney's fees only if: (1) a contractual or statutory provision creates a right to recover attorney's fees; or (2) some other recognized exception to the American Rule applies, allowing for recovery of such fees in a particular case." Otherwise, litigants are responsible for their own attorney's fees.

One of the most common exceptions to the American Rule involves contracts that contain provisions expressly permitting or requiring the prevailing party to recover its reasonable attorney's fees incurred to enforce the contract. Accordingly, parties who have prevailed in litigation to enforce their contractual rights are entitled to recover their reasonable attorney's fees once they demonstrate that the contract upon which their claims are based contains a provision entitling the prevailing party to its attorney's fees.

*Eberbach v. Eberbach*, 535 S.W.3d 467, 474 (Tenn. 2017) (citations omitted) (quoting *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009) (citing *Taylor v. Fezell*, 158 S.W.3d 352, 359 (Tenn. 2005); *John Kohl & Co. P.C. v. Dearborn & Ewing*, 977 S.W.2d 528, 534 (Tenn. 1998))).

The relevant lease provision specified that default by Plaintiffs would trigger the Heltons' option to terminate the lease and Plaintiffs' liability for the Heltons' attorney fees.

Our review of the amended agreed judgment confirms that the trial court did not make any explicit finding that Plaintiffs defaulted on the lease or that the lease was terminated. This was despite the fact that the Heltons mailed Plaintiffs a "Notice to Vacate/Termination of Lease," filed an unlawful detainer action against them, and asserted a counterclaim seeking termination of the lease. Instead, the agreed judgment allowed Plaintiffs to perform under the lease and stated that the Heltons were entitled to monetary damages on their breach of contract claim to the extent of reimbursement for property taxes, unpaid rent through April 30, 2024, and attorney fees and expenses. In the same judgment, the trial court found in Plaintiffs' favor on their specific performance claim, ordered that Plaintiffs would have until 5:00 p.m. on May 1, 2024, to tender $895,000 to the Heltons, and ordered that, upon receipt of the money, the Heltons "shall deliver a deed, suitable for recording" for the property which was the subject of the lease with purchase option. The parties followed this procedure on May 1, 2024. Nor did the judgment and the incorporated ruling include a finding that the lease and the purchase option were separate and severable, as the Heltons argue on appeal. In the ruling, the court simply stated, "the [Heltons] get attorney's fees for the need to prosecute this action under the circumstances" and that it was "not sure" if the lease's default provision excluded the opportunity for Plaintiffs to exercise the purchase option.[3] With the foregoing considerations in mind, we vacate the award of attorney fees to the Heltons. Likewise, we respectfully decline the Heltons' request for attorney fees on appeal. We affirm the trial court's judgment in all other respects.

B.

Plaintiffs assign as error the trial court's failure to address their claim of "tortious interference with business dealings." Plaintiffs did not allege tortious interference with business dealings as a cause of action in their complaint. Instead, in count three, they alleged tortious interference with contract, which is a distinct cause of action, and on which judgment was entered in favor of the Heltons. *See Robinson v. City of Clarksville*, 673 S.W.3d 556, 574 (Tenn. Ct. App. 2023) (distinguishing the elements of interference with a business relationship from those of interference with contract rights and noting that "[a]lthough they are similar in some ways, the two causes of action are separate and distinct, with the chief distinction being that a cause of action for interference with business relationship does not require an existing contract.").

Tennessee Rule of Civil Procedure 15.02 provides that:

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been

---

[3] We are mindful that the trial court is a court of equity and that the parties had fewer than twenty-four hours between the end of trial and the expiration of the lease to reach a fair resolution in this case.

raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.

Tenn. R. Civ. P. 15.02. Nothing in the record indicates that tortious interference with business dealings was tried by express or implied consent or that Plaintiffs moved the trial court to find as much. We discern no error on this issue.

## V.    CONCLUSION

For the foregoing reasons, we affirm in part and reverse in part the judgment of the chancery court. The case is remanded for such further proceedings as may be necessary and consistent with this opinion. Costs of the appeal are taxed one half to the appellants, Jay Mace and Janice Mace, and one half to the appellees, Nancy R. Helton and Adam Helton.

_____
JOHN W. McCLARTY, JUDGE